Andrea J. Ritchie, Esq.
428 Park Pl., 2B
Brooklyn, NY 11238
(646) 831-1243 · andreajritchie@aol.com



July 16, 2007

# MEMO ENDORSED

Hon. James C. Francis IV
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street, Room 1960
New York, New York 10007-1212

### VIA FACSIMILE: (212) 805-7930

Re:       *Tikkun v. City of New York, et al.*
          05 Civ. 9901 (KMK) (JCF)

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 8/24/07

Dear Judge Francis:

I write concerning defendants' outstanding discovery obligations in the above-referenced case. Despite multiple requests, repeated extensions of courtesies, the passage of numerous mutually agreed-upon and plaintiff-imposed deadlines, and allowance of extensive opportunities to cure deficiencies in defendants' discovery responses, plaintiff is left with no choice but to seek the Court's intervention. I therefore respectfully move that defendants be compelled to respond fully and completely to the long-outstanding discovery requests described hereinafter.

### Background

As outlined in plaintiff's December 15, 2006 letter to opposing counsel (Exhibit A), defendants were served with Plaintiff's First Set of Interrogatories and Requests for Production of Documents on August 1, 2006, as provided by the Case Management Order in place in this case at that time. After protracted delays, defendants provided wholly insufficient responses to these requests on January 24, 2007. (Exhibit B.) Despite numerous requests that defendants supplement their initial responses, to date they have failed to do so.

In the absence of such responses, and in an effort to narrow discovery issues and prepare for upcoming depositions, plaintiff served defendants with Plaintiff's First Set of Requests for Admissions on April 25, 2007. Defendants responded in full on June 22, 2007 by mutual agreement of the parties. (Exhibit C.) With few exceptions, defendants denied the requests wholesale, stating in each case that, "although defendants have made reasonable inquiries, they have not yet completed their investigation of the case and therefore, the information currently available to defendants is incomplete." Almost

1

two years have passed since this case was filed, and defendants have now had almost a year to conduct their investigation in response to plaintiff's discovery requests. While the sufficiency of defendants' responses may be the subject of a separate application to the Court if the parties are unable to resolve their differences, the propriety of several of defendants' responses is currently ripe for judicial intervention.

## NYPD and DOC policies

In addition to claims relating to constitutional violations for false arrest, excessive detention and malicious prosecution similar to those filed by other RNC plaintiffs arrested on 16th Street on August 31, 2004, the above-captioned case also includes constitutional claims based on an unlawful search of the plaintiff, a transgender woman, at MAPC, during which she alleges that NYPD or DOC officers touched her breasts and placed their hands inside her pants to touch her genitals for the sole purpose of determining whether she was "a boy or a girl." (Complaint at ¶¶ 79-83.) Ms. Tikkun is further asserting a *Monell* claim that this search was conducted pursuant to a policy, pattern or practice of performing invasive searches of transgender individuals for the sole purpose of viewing and/or touching their genitals to determine their gender. (Complaint at ¶¶ 85, 129-134.) Therefore, discovery relevant to searches performed on Ms. Tikkun and to her placement and detention in NYPD and/or DOC custody are central to her case.

Accordingly, Plaintiff's First Set of Interrogatories and Requests for Production of Documents explicitly asked defendants to produce all written NYPD or DOC policies and training materials concerning the search and detention of individuals in NYPD or DOC custody, as well as any written policies specifically addressing the search and detention of transgender individuals.[1]

In his response to plaintiff's discovery requests, served almost six months later, Mr. Mirro asserted numerous boilerplate objections, but indicated that the defendants were "searching for documents setting forth NYPD policies or practices in effect over the past 3 years concerning the treatment of prisoners on the basis of gender, sexual orientation or transgender status," as well as "documents setting forth NYPD or DOC policies or practices in effect over the past 3 years concerning searches, including strip searches, of prisoners" and "NYPD or DOC policies or practices in effect over the past 3 years concerning the housing of prisoners." He further committed to "make those documents available if and when they are identified."

---

[1] Specifically, Request No. 24 asked for "[a]ll documents and materials of any variety (including, but not limited to, memoranda, written policies, or training materials) relating to any policy or practice of the NYPD or DOC concerning searches of persons, including, but not limited to, strip searches and searches of transgender individuals."

Request No. 26 asked for "[a]ll documents and materials of any variety (including, but not limited to, memoranda, written policies, or training materials) relating to any policy or practice of the NYPD or DOC concerning detention of lesbian, gay, bisexual or transgender individuals, including, but not limited to, any policy or practice concerning placement and treatment of lesbian, gay, bisexual or transgender individuals in sex-segregated facilities as well as disclosure of the sexual orientation or gender identity of any individual in NYPD or DOC custody."

Notwithstanding the fact that defendants' answers are only partially responsive, nearly a year since plaintiff's document requests were served, and almost six months after defendants expressed their intent to produce documents responsive to plaintiff's policy requests, no such documents have been produced.

In an effort to determine whether or not such policies do, in fact, exist, plaintiff served a First Set of Requests for Admissions on opposing counsel on April 25, 2007. By agreement of the parties, defendants were to provide complete responses on June 22nd. In an effort to comply with counsel's obligations under Local Rule 37.3, when agreeing to this extension I renewed my request for written polices responsive to plaintiff's initial discovery requests. In an e-mail confirming the contents of our telephone conversation, defense counsel promised to provide "the name(s) of a policy witness(es) and any related documents ASAP." (Exhibit D, May 22, 2007 e-mail from J. Mirro to A. Ritchie)

Subsequently, on June 22, 2007, Defendants *denied* requests to admit that the NYPD and DOC had *no written policies* specifically addressing: (1) searches of transgender individuals, (2) the determination of an individual's gender for the purposes of placement in sex-segregated detention facilities, and (3) the detention and housing of transgender individuals. *See* Exhibit C, Defendants' Amended Responses to Plaintiff's First Set of Requests to Admit Nos. 1-4, 9-10, 17-18. However, despite numerous requests for such policies over the past year and promises to produce same, defendants have yet to produce a single policy supporting their denial of the fact that no such policies exist.

**Plaintiff is therefore left with no choice but to ask the Court to order defendants to produce the policies described in Plaintiff's Interrogatories 24 and 26, as well as any document(s) informing defendants' denial of Plaintiff's First Set of Requests for Admissions 1-4, 9, 10, 17, and 18, by no later than July 23, 2007. If defendants are unable to produce such policies, plaintiff respectfully asks the Court to deem the relevant Requests admitted for the purposes of this litigation.**

Similarly, plaintiff experienced sexual harassment by NYPD and/or DOC officers stationed at both Pier 57 and MAPC. *See* Complaint at ¶¶ 72, 75. Plaintiff believes that such harassment was enabled by the absence of any policy explicitly prohibiting sexual harassment of members of the public by NYPD or DOC officers, combined with a custom or practice of allowing such behavior to go unpunished.

Accordingly, Plaintiff's First Set of Interrogatories and Requests for Production of Documents No. 20 requested all documents relating to any NYPD or DOC policy concerning sexual harassment of members of the public. Nevertheless, despite multiple requests, to date defendants have produced neither the documents they describe in their discovery responses, nor any other documents responsive to the request.

Plaintiff's First Set of Requests for Admissions asked defendants to admit that the NYPD and DOC's "written policies, guidelines, orders, directives or materials" do not

3

"specifically address or mention sexual harassment of members of the public by NYPD officers." Defendants denied this request, but have yet to produce any document in response to plaintiff's discovery requests supporting such a denial.

**Plaintiff therefore asks the Court to order defendants to produce the document(s) or the identity(ies) of the individual(s) who provided the information relied upon to deny Plaintiff's Request for Admission No. 21 by no later than July 23, 2007. Failing that, plaintiff respectfully asks this Court to deem Request No. 21 admitted for the purposes of this litigation.**

## Policy Witness(es)

In their January 24, 2007 responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, and specifically Interrogatories 14, 15, and 16, defendants committed to identifying and producing individuals with knowledge of the NYPD's policies, practices, customs, usages and training with respect to the treatment, search and detention of lesbian, gay, bisexual and transgender individuals as well as with respect to sexual harassment of members of the public by NYPD officers.

On March 17, plaintiff inquired as to scheduling these individuals' deposition(s), and followed up on several occasions thereafter. *See* Exhibit E, March 14, March 21 and April 2, 2007 e-mails from A. Ritchie to J. Mirro. Counsel for the parties discussed the matter on April 9, at which time Mr. Mirro indicated that he would be in a position to provide me with the identities of the individuals defendants would be producing, along with proposed dates for their deposition(s), by the end of the week of April 20th. Having received no further information on the matter, I once again followed up with Mr. Mirro on this matter by e-mail on May 21. *See* Exhibit F, May 21, 2007 e-mail from A. Ritchie to J. Mirro. On May 22nd, Mr. Mirro and I spoke by telephone, and during this conversation he once again indicated that he expected that he would be in a position to provide me with the identities of the individuals in question, along with proposed dates for their depositions, within a matter of days. *See* Exhibit D. On May 27, during Lt. Thompkins' deposition, I once again inquired as to Mr. Mirro's progress in obtaining the relevant information from his clients. However, at that point Mr. Mirro indicated that while he had been provided with the name of an individual, he would not provide me with that information, or proposed dates for deposition(s), for another two weeks. I once again followed up by e-mail with Mr. Mirro on May 30, 2007, to no avail. *See* Exhibit G, May 30, 2007 e-mail from A. Ritchie to J. Mirro. I also raised the issue in my June 8, 2007 letter to Mr. Mirro. (Exhibit H.) In his response, Mr. Mirro merely stated that he had not yet had an opportunity to speak with the policy witness(es). *See* Exhibit I, June 12, 2007 e-mail from J. Mirro to A. Ritchie.

To Mr. Mirro's credit, he did include a proposed date of October 23, 2007 for the deposition of a single policy witness in the *Tikkun* case on defendants' proposed deposition schedule recently so ordered by your Honor. Fortuitously, all plaintiff's counsel are available on this date.

4

However, despite a renewed request for this information on July 3, 2007, Mr. Mirro has yet to identify the witness(es) with knowledge of relevant polices, practices, customs and training defendants will produce on that date, the scope and source of their expertise, or the documents on which their testimony will be based. *See* Exhibit J, July 3, 2007 e-mail from A. Ritchie to J. Mirro. Plaintiff is entitled to this information in order to determine whether the witness(es) who will be proffered satisfies her discovery requests, whether a single deposition date is sufficient for all policy depositions, to prepare for the deposition(s), and to determine what expert opinions or testimony, if any, will be necessary to address the witness(es)' testimony.[2]

**Accordingly, plaintiff requests that defendants be ordered to provide the identity of the witness(es) that they will be producing pursuant to Fed. R. Civ. P. 30(b)(6) to testify as to the NYPD's polices, practices, customs, usage, and training with respect to the treatment, search and detention of lesbian, gay, bisexual and transgender individuals, as well as with respect to the sexual harassment of members of the public by members of the NYPD, by no later than July 23, 2007.**

## Identities of individuals with knowledge of facts relevant to this case

### *Fact Witnesses*

Plaintiff's Interrogatories 1, 3, 7, 8, and 9 ask defendants to identify any and all NYPD officers who "were present at and/or participated in the incident or any portion of the incident...,"[3] "all persons...who witnessed the incident or any portion of the incident...," "transported plaintiff while in police custody...," "were stationed or at any time located on the ramp found at the entrance of Pier 57 on August 31st between the hours of 5:00 pm and midnight...," and "all NYPD or DOC employees who had any contact with plaintiff at Central Booking or the Mass Arrest Processing Center," respectively.

---

[2] While the deadline for identification of expert witnesses for both plaintiff and defendants has passed under the original and amended case management orders entered in this case, counsel for the parties have stipulated to a deadline for completion of plaintiff's expert discovery 30 days after the conclusion of fact discovery in this case. However, plaintiff is mindful of the Court's imposition of a November 17, 2007 deadline for completion of all depositions in this case, and a December 1, 2007 deadline for the filing of motions for summary judgment. Accordingly, in the event expert testimony becomes necessary, plaintiff requires sufficient lead time to identify an appropriate expert, secure an opinion, and schedule their deposition. Given that defendants' proposed date for the deposition of their 30(b)(6) witness is within less than a month of the November 17, 2007 deadline, waiting for the date of the deposition to learn the identity of the witness and scope of their testimony would effectively preclude plaintiff from obtaining expert discovery if it proved necessary.

[3] The "incident" is defined in Plaintiff's First Set of Interrogatories and Requests for Production of Documents as the events described in the complaint, namely the events immediately preceding Ms. Tikkun's arrest on August 31, 2004 on 16th St. between Union Square West and Irving Place up to and including her release on her own recognizance from the arraignment court at 100 Center St. on September 1, 2004.

In light of plaintiff's claim that she was subjected to an unlawful search at MAPC, plaintiff is particularly interested in individuals responsive to Interrogatory No. 9 who may have knowledge of any searches performed on Ms, Tikkun as well as of her placement and detention at MAPC.

### Individual(s) with knowledge of Ms. Tikkun's placement while at MAPC

Defendants' response to Plaintiff's First Set of Requests to Admit No. 47, which asks defendants to admit that "[a]fter plaintiff Tikkun was removed from the jail cell and searched, she was escorted to and placed in an empty cell in MAPC," strongly suggests that defendants are aware of the identity of a witness who falls within the scope of Plaintiff's Interrogatory No. 9.[4]

Plaintiff attempted, prior to the Court's June 29 deadline for reaching agreement on deposition dates for all fact witnesses in RNC related cases, to discover the identity of the individual who provided the information enabling defendants to admit that Ms. Tikkun was placed in an empty cell at MAPC. *See* Exhibit K, June 25, 2007 and June 28, 2007 e-mails from A. Ritchie to J. Mirro. During a telephone conversation between counsel for the parties on June 28, 2007, Mr. Mirro indicated that he would review his notes and provide me with the identity of the relevant individual so that we could include them on the proposed deposition schedule defendants were developing at that time.[5] However, I never heard back from Mr. Mirro on this point before the deposition schedule was finalized. Although I followed up by e-mail with Mr. Mirro on this issue on July 3, 2007, I have yet to receive a response. *See* Exhibit J.

**Plaintiff is therefore requesting that the Court order defendants to identify the individual(s) with knowledge of Ms. Tikkun's placement at MAPC who provided defense counsel with the information used to respond to Request No. 47 and, in the event that their deposition has not already been scheduled, to propose dates for their deposition(s) pursuant to Discovery Order # 2 by no later than July 23, 2007.**

---

[4] Defendants responded:

> Defendants reiterate and incorporate their General Objections. Defendants further object to this Request on the ground that, although defendants have made reasonable inquiries, they have not yet completed their investigation of this case and, therefore, the information currently available to defendants is incomplete. Subject to and without waiving the foregoing objections, defendants deny this Request *except admit that, during her detention, plaintiff Tikkun was placed in an empty cell at MAPC.*" [emphasis added] Defendants' Amended Responses to Plaintiff's First Set of Requests for Admissions, June 22, 2007.

[5] The deposition of such individuals has already been noticed by plaintiff insofar as, on February 1, 2006, pursuant to the Case Management Order then in place in this case, plaintiff noticed "Unidentified JANE DOE defendants who conducted any search(es) of plaintiff Kaitlyn Tikkun at MAPC on or about August 31 or September 1, 2004 (to be identified by Defendants with particularity)."

### Bus driver

While defendants have produced a list of individuals with knowledge of the events of August 31, 2004 on 16th Street and duty rosters indicating individuals who were present at both Pier 57 and the Mass Arrest Processing Center (MAPC) during the relevant time periods, despite multiple requests, they have yet to identify the individual who drove the bus that transported Ms. Tikkun to the MAPC on August 31, 2004. *See* Exhibit L, May 23, 2007 e-mail from A. Ritchie to J. Mirro. To date, all defendants have managed to do is represent, through their counsel, that P.O. Lucille Fredericks, identified by individuals transported on the bus as the driver, was not, in fact the driver of the bus. *See* Exhibit C, Defendants' Amended Responses to Plaintiff's First Set of Requests to Admit No. 26.

**We therefore ask the Court to compel defendants to identify the driver of MTA bus #4872 on August 31, 2004 at approximately 8:00 pm by no later than July 23, 2007.**

### Prisoner Movement Slip

Plaintiff's prisoner movement slip may provide important information regarding her handling and placement at MAPC and is therefore central to her claims that she was unlawfully searched and detained while at that facility. Plaintiff explicitly requested a copy of this document in Plaintiff's First Set of Interrogatories and Requests for Production of Documents No. 1. While defendants' response pointed plaintiff to documents already produced and to documents that would be produced in response to the Court's November 13, 2006 Order, none of defendants' productions to date, including Ms. Tikkun's DA file, contain Ms. Tikkun's Prisoner Movement Slip. *See* Exhibit B.

During her deposition testimony, Lt. Thompkins, one of the supervising officers present at MAPC during the time Ms. Tikkun was detained there, confirmed that Prisoner Movement Slips were in fact prepared for individuals detained at that facility.

Mr. Mirro's position, taken in his response to my July 8, 2007 letter, that he need not produce Ms. Tikkun's Prisoner Movement Slip because defendants do not have it, is inconsistent with defendants' obligations under this Court's discovery Orders. *See* Exhibit I; *see also MacNamara et al. v. City of New York et al.*, Civ. Action 04cv9162, Memorandum Opinion and Order, November 12, 2006 at 37.

**Plaintiff therefore asks the Court to compel defendants to produce Ms. Tikkun's Prisoner Movement Slip by no later than July 23, 2007 or provide an affidavit consistent with this Court's prior orders outlining the normal chain of custody for such documents and the efforts made to locate Ms. Tikkun's Prisoner Movement Slip.**

## Photographs and Videotapes

### *Videotapes*

On May 22, 2002, I requested copies of two videotapes responsive to Plaintiff's Requests for Production of Documents Nos. 20, 22, and 24 which are identified on defendants' June 14, 2006 index of videos produced for viewing at the offices of Corporation Counsel as Prisoner Search Training (#142) and RNC Training - Courtesy, Professionalism, Respect ("CPR") (#163). *See* Exhibit M, May 22, 2007 e-mail from A. Ritchie to J. Mirro. Six weeks later, I wrote Mr. Mirro inquiring as to the status of that request, but have yet to receive a response. *See* Exhibit J.

**Given that these two videos represent the only discovery produced by defendants to date that appears even remotely responsive to plaintiff's requests for the NYPD's sexual harassment and search of persons policies, plaintiff requests that defendants be ordered to produce copies of videos #142 and #163 by no later than July 23, 2007.**

### *Photo from DANY files*

As reiterated in plaintiff's June 8, 2007 letter to opposing counsel (Exhibit C), Plaintiff's Request for Documents No. 10 explicitly requests "[a]ll photographs (including, but not limited to, Polaroids)...or other recordings of plaintiff including, but not limited to, any taken while she was in the vicinity of Union Square, while she was being arrested and was in custody on E. 16th St, at Pier 57, or at the Mass Arrest Processing Center or Central Booking."

On May 25, 2007, at the outset of P.O. Lamendola's deposition, I called Mr. Mirro's attention to a November 1, 2006 letter from the office of the District Attorney of New York (DANY) *addressed to him* (Exhibit N), which indicated that the District Attorney's file contained a Polaroid photograph of Ms. Tikkun, and inquired as to why he had yet to produce said photograph. Mr. Mirro responded that he was unaware of the existence of either the letter or the photograph, but would request the photograph from the DA's office.

In his response to my June 8, 2007 letter, Mr. Mirro maintained that he was under no obligation to produce information in the possession and control of third parties, but nevertheless committed to producing the photograph in question. *See* Exhibit I. Mr. Mirro's position with respect to his obligations in this respect is completely inconsistent with the Court's explicit direction in the November 13, 2006 Memorandum Opinion and Order - "[i]f DANY has already turned over a subpoenaed document to the City, the City is ordered to distribute it to all plaintiffs' counsel. If

DANY has not turned over a subpoenaed document to the City, it must do so, and the City shall then distribute it to all plaintiffs' counsel."[6]

**Accordingly, plaintiff requests that defendants be ordered to produce the photograph contained in Ms. Tikkun's DANY file by no later than July 23, 2007.**

While defense counsel has argued that applications to the Court to compel responses to discovery requests only further impede his ability to comply with them by distracting from matters at hand, *see* Exhibit D, Mr. Mirro has clearly taken advantage of plaintiff's counsel's willingness to extend courtesy after courtesy and accept his representations that the information requested will be provided within a reasonable time frame. Plaintiff regrets troubling the Court with such an extensive list of discovery disputes at this time, however, the Court can rest assured, as evidenced by the voluminous correspondence attached hereto, that every effort has been made to resolve the issues among the parties, unfortunately, to no avail.

Respectfully submitted,

*Andrea Ritchie*

Andrea J. Ritchie
(AR 2769)
Counsel for Plaintiff Kaitlyn Tikkun

8/24/07

*Defendants shall produce the information responsive to plaintiff's requests by September 28, 2007, to the extent they have not already done so.*

*SO ORDERED.*

*James C. Francis IV*

*USMJ*

---

[6] *MacNamara et al. v. City of New York et al.*, Civ. Action 04cv9162, Memorandum Opinion and Order, November 12, 2006 at 37.