**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

KAITLYN TIKKUN,

Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity;
MICHAEL BLOOMBERG, Mayor of the City of New
York; RAYMOND KELLY, New York City Police
Commissioner; JOSEPH ESPOSITO, Chief of
Department,  New York City Police Department;
NICHOLAS ESTAVILLO, Former Chief of Patrol,
New York City Police Department; PATRICK
DEVLIN, Former Assistant Chief, Criminal Justice
Bureau; STEPHEN HAMMERMAN, Deputy
Commissioner for Legal Matters, New York City
Police Department; THOMAS DOEPFNER, Assistant
Deputy Commissioner for Legal Matters, New York
City Police Department; KERRY SWEET, Deputy
Inspector, New York City Police Department; RUBY
MARIN-JORDAN, Senior Counsel, New York City
Police Department; LEGAL BUREAU
SUPERVISOR(S) AT PIER 57; LEGAL BUREAU
SUPERVISOR(S) AT MAPC; THOMAS GRAHAM,
Commander, Disorders Control Unit, New York City
Police Department; BRUCE SMOLKA, Former
Assistant Chief, Patrol Borough Manhattan South;
TERENCE MONAHAN, Assistant Chief of the Bronx
Borough Command, New York City Police
Department; THOMAS PURTELL, Assistant Chief,
Patrol Borough Bronx; GERALD DIECKMANN,
Inspector, New York City Police Department;JAMES
ESSIG, Deputy Inspector, New York City Police
Department; JOHN J. COLGAN, Assistant Chief,
New York City Police Department; THOMAS
GALATI, Deputy Inspector, New York City Police
Department; New York Police CAPT. ALEXANDER
LAERA; New York Police CAPT. PAUL
DEENTREMONT; New York Police CAPT.
ANTHONY JOHNSON; New York Police LT.
DANIEL ALBANO; LT. JOHN CONNOLLY; New
York Police LT. PATRICK CORTRIGHT; New York
Police LT. MARK KEEGAN; New York Police SGT.

**AMENDED COMPLAINT**

05 Civ. 9901 (KMK) (JCF)

**JURY TRIAL DEMANDED**

(First Name Unknown ("FNU")) SALDO, Queens
South Task Force; New York Police SGT. EVELYN
RIVERA (Shield # 4934); New York Police SGT.
(First Name Unknown ("FNU")) HERNANDEZ; New
York P.O. JOSEPH LAMENDOLA (Shield #15378);
New York P.O. (First Name Unknown ("FNU"))
STREMEL; New York P.O. (First Name Unknown
("FNU")) BARNES; New York P.O. (First Name
Unknown ("FNU")) VEERAPEN; New York P.O.
(First Name Unknown ("FNU")) SIMS; New York
P.O. C. GATLING; New York P.O. D. EDWARDS;
New York P.O. G. GETHERS; New York P.O. D.
JACQUES; New York P.O. (First Name Unknown
("FNU")) CARR; New York P.O. W. CAMPBELL; New
York P.O. G. CANCEL; New York P.O. S. FEAGINS;
New York P.O. J. HARRISON; New York P.O. P.
HARRIS; New York P.O. A. RUBIO; New York P.A.
(First Name Unknown ("FNU")) BLAKENEY; New
York P.A. (First Name Unknown ("FNU")) WORKS;
New York P.A. (First Name Unknown ("FNU"))
PAGAN; New York P.A. (First Name Unknown
("FNU"))WILLIAMS-ROBINSON; New York P.A.
(First Name Unknown ("FNU")) WILLIAMS-
ANDERSON; JAMES DOE 1, Emergency Medical
Technician, who conducted a pre-arraignment
medical screening of Kaitlyn Tikkun on September 1,
2004 at or about 7:12 am and whose signature
appears at Bates No. TIK (D) 0130; MARTIN F.
HORN, Commissioner, New York City Department of
Correction, ROBERT N. DAVOREN, Chief of
Department, New York City Department of
Correction; New York City Police Supervisors and
Commanders RICHARD ROEs 1-50; New York City
Department of Correction Supervisors and
Commanders ROBERT ROEs 1-50; New York City
Police Officers JOHN and JULIE DOES 1-50; New
York City Correctional Officers JANE and JAMES
DOES 1-50; individually and in their official
capacities, jointly and severally, (the names John,
Julie, James and Jane Doe, as well as Richard and
Robert Roe, being fictitious, as the true names of
these defendants are presently unknown),

                                                      Defendants.

------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages, attorney's fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as and under the common law of the State of New York, for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.   Plaintiff also asserts supplemental state law statutory and tort claims.

2.      It is alleged that individual police officer defendants made an unreasonable seizure of the plaintiff's person by interfering with her freedom of movement and then arresting her without individualized determination of probable cause in the vicinity of a demonstration held during the Republican National Convention (the "RNC") in August of 2004. It is also alleged that individual police officer and corrections officer defendants used unreasonable and excessive force against plaintiff, engaged in unreasonable conduct during her seizure, including subjecting her to unconstitutional, invasive searches while in police custody, subjected plaintiff to excessive, unreasonably prolonged, unnecessary and punitive detention, as well as excessive, unnecessary and punitive conditions of confinement that were shocking to the conscience. It is also alleged that plaintiff was intentionally subjected to such unreasonable conduct by defendants based on her gender and sexual orientation and because she engaged in activities protected by the First Amendment.

3.    The defendants in this action, THE CITY OF NEW YORK, a municipal entity; MICHAEL BLOOMBERG, Mayor of the City of New York; RAYMOND KELLY, New York City Police Commissioner; JOSEPH ESPOSITO, Chief of Department, New York City Police Department; NICHOLAS ESTAVILLO, Former Chief of Patrol, New York City Police Department; PATRICK DEVLIN, Former Assistant Chief, Criminal Justice Bureau; STEPHEN HAMMERMAN, Deputy Commissioner for Legal Matters, New York City Police Department; THOMAS DOEPFNER, Assistant Deputy Commissioner for Legal Matters, New York City Police Department; KERRY SWEET, Deputy Inspector, New York City Police Department; RUBY MARIN-JORDAN, Senior Counsel, New York City Police Department; LEGAL BUREAU SUPERVISOR(S) AT PIER 57; LEGAL BUREAU SUPERVISOR(S) AT MAPC; THOMAS GRAHAM, Commander, Disorders Control Unit, New York City Police Department; BRUCE SMOLKA, Former Assistant Chief, Patrol Borough Manhattan South; TERENCE MONAHAN, Assistant Chief of the Bronx Borough Command, New York City Police Department; THOMAS PURTELL, Assistant Chief, Patrol Borough Bronx; GERALD DIECKMANN, Inspector, New York City Police Department; JAMES ESSIG, Deputy Inspector, New York City Police Department; JOHN J. COLGAN, Assistant Chief, New York City Police Department; THOMAS GALATI, Deputy Inspector, New York City Police Department; New York Police CAPT. ALEXANDER LAERA; New York Police CAPT. PAUL DEENTREMONT; New York Police CAPT. ANTHONY JOHNSON; New York Police LT. DANIEL ALBANO; LT. JOHN CONNOLLY; New York Police LT. PATRICK CORTRIGHT; New York Police LT. MARK KEEGAN; New York Police SGT. (First Name

4

Unknown ("FNU")) SALDO, Queens South Task Force; New York Police SGT. EVELYN RIVERA (Shield # 4934); New York Police SGT. (First Name Unknown ("FNU")) HERNANDEZ; New York P.O. JOSEPH LAMENDOLA (Shield #15378); New York P.O. (First Name Unknown ("FNU")) STREMEL; New York P.O. (First Name Unknown ("FNU")) BARNES; New York P.O. (First Name Unknown ("FNU")) VEERAPEN; New York P.O. (First Name Unknown ("FNU")) SIMS; New York P.O. C. GATLING; New York P.O. D. EDWARDS; New York P.O. G. GETHERS; New York P.O. D. JACQUES; New York P.O. (First Name Unknown ("FNU")) CARR; New York P.O. W. CAMPBELL; New York P.O. G. CANCEL; New York P.O. S. FEAGINS; New York P.O. J. HARRISON; New York P.O. P. HARRIS; New York P.O. A. RUBIO; New York P.A. (First Name Unknown ("FNU")) BLAKENEY; New York P.A. (First Name Unknown ("FNU")) WORKS; New York P.A. (First Name Unknown ("FNU")) PAGAN; New York P.A. (First Name Unknown ("FNU")) WILLIAMS-ROBINSON; New York P.A. (First Name Unknown ("FNU")) WILLIAMS-ANDERSON; JAMES DOE 1, Emergency Medical Technician, who conducted a pre-arraignment medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am and whose signature appears at Bates No. TIK (D) 0130; MARTIN F. HORN, Commissioner, New York City Department of Correction; ROBERT N. DAVOREN, Chief of Department, New York City Department of Correction; New York City Police Supervisors and Commanders RICHARD ROEs 1-50; New York City Department of Correction Supervisors and Commanders ROBERT ROEs 1-50; New York City Police Officers JOHN and JULIE DOES 1-50; New York City Correctional Officers JANE and JAMES DOES 1-50, individually and in their official capacities, jointly and

5

severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices, and/or customs to punish peaceful protest during the RNC by, *inter alia*, (i) engaging in indiscriminate mass arrests which were unlawful and without probable cause, (ii) instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, (iii) instituting a system of preventive detention to keep lawful, peaceful demonstrators off the streets during the RNC by not issuing summonses or citations to RNC arrestees, and requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of the offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and (iv) subjecting those arrested to unlawful conditions of confinement, including sexual harassment, unlawful searches, and detention for an inordinate and unreasonable amount of time.

4.      Plaintiff seeks (i) compensatory damages for the injuries caused by defendants' unlawful conduct; (ii) punitive damages assessed against the individual defendants to deter such intentional or reckless deviations from well-settled constitutional law; (iii) an award of attorneys' fees and costs; (iv) a declaratory judgment that the policies, practices and/or customs described herein violate the First, Fourth, Fifth, Sixth and Fourteenth Amendments; (v) injunctive relief ordering the destruction of all fingerprints, in whatever form existent, taken of plaintiff pursuant to her arrest during the RNC, including those fingerprints transmitted to and retained by the New York State Division of Criminal Justice Services and the FBI; (vi) injunctive relief ordering that

plaintiff's RNC arrest record be expunged; and (vii) such other relief as this Court deems equitable and just.

## JURISDICTION

5.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

6.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), as this action seeks redress for violation of plaintiff's constitutional, civil, statutory, and common law rights.

7.     Plaintiff's claims for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 29 U.S.C. § 1367 (a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

9.     Venue is properly laid in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

10.     Plaintiff respectfully demands a trial by jury of all issues in this action and on each and every one of her damage claims, pursuant to Federal Rule of Civil Procedure 38(b).

**PARTIES**

11.    Plaintiff KAITLYN TIKKUN is a transgender lesbian who is, and was at all relevant times, a resident of the City and State of New York.

12.    Defendant the CITY OF NEW YORK ("the City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

13.    Defendant the CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

14.    Defendant the CITY OF NEW YORK also maintains the New York City Department of Corrections, a duly authorized public authority and/ or corrections department, charged with the custody and detention, pending arraignment and/or trial, of individuals arrested in the City, and acting under the direction and supervision of the aforementioned municipal corporation, the CITY OF NEW YORK.

15.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and the New York City Department of Corrections ("NYDOC"), and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or

customs complained of herein. He is sued in both his individual and official capacities.

16.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

17.     Defendant JOSEPH ESPOSITO is and was at all times relevant herein, the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

18.     Defendant NICHOLAS ESTAVILLO was at all times relevant here the Chief of Patrol for the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

19.     Defendant PATRICK DEVLIN was at all times relevant here the Assistant Chief of the Criminal Justice Bureau, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

20.     Defendant STEPHEN HAMMERMAN is and was at all times relevant herein the Deputy Commissioner for Legal Matters for the NYPD, and he

is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

21.     Defendant THOMAS DOEPFNER is and was at all times relevant herein Assistant Deputy Commissioner for Legal Matters for the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

22.     Defendant THOMAS GRAHAM is and was at all times relevant herein, the Commanding Officer of the Disorder Control Unit of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

23.     Defendant BRUCE SMOLKA was at all times relevant here an Assistant Chief of the NYPD and the Chief of Patrol Borough Manhattan South, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

24.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and Chief of the Bronx Borough Command and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

25.    Defendant THOMAS PURTELL is an Assistant Chief in the NYPD Patrol Borough Bronx, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

26.    Defendant GERALD DIECKMANN is an Inspector of the New York City Police Department, and was present at Union Square, acting in a supervisory capacity, during the relevant time frame, and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

27.    Defendant JAMES ESSIG is an Inspector of the New York City Police Department, and was present at Union Square, acting in a supervisory capacity, during the relevant time frame, and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

28.    Defendant JOHN J. COLGAN is an Assistant Chief in the NYPD and was involved in the development of the RNC arrest processing procedure and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

29.    Defendant MARTIN F. HORN is and was at all times relevant herein, the Commissioner of the New York City Department of Corrections, and

he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

30.    Defendant ROBERT N. DAVOREN is and was at all times relevant herein, the Chief of Department of the New York City Department of Corrections, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

31.    New York City Police Supervisors and Commanders JOSEPH ESPOSITO, Chief of Department, New York City Police Department; NICHOLAS ESTAVILLO, Former Chief of Patrol, New York City Police Department; PATRICK DEVLIN, Former Assistant Chief, Criminal Justice Bureau; STEPHEN HAMMERMAN, Deputy Commissioner for Legal Matters, New York City Police Department; THOMAS DOEPFNER, Assistant Deputy Commissioner for Legal Matters, New York City Police Department; KERRY SWEET, Deputy Inspector, New York City Police Department; RUBY MARIN-JORDAN, Senior Counsel, New York City Police Department; LEGAL BUREAU SUPERVISOR(S) AT PIER 57; LEGAL BUREAU SUPERVISOR(S) AT MAPC; THOMAS GRAHAM, Commander, Disorders Control Unit, New York City Police Department; BRUCE SMOLKA, Former Assistant Chief, Patrol Borough Manhattan South; TERENCE MONAHAN, Assistant Chief of the Bronx Borough Command, New York City Police Department; THOMAS PURTELL, Assistant Chief, Patrol Borough Bronx; GERALD DIECKMANN, Inspector, New York City Police Department; JAMES ESSIG, Deputy Inspector, New York City Police Department; JOHN J. COLGAN,

Assistant Chief, New York City Police Department; THOMAS GALATI, Deputy Inspector, New York City Police Department; New York Police CAPT. ALEXANDER LAERA; New York Police CAPT. PAUL DEENTREMONT; New York Police CAPT. ANTHONY JOHNSON; New York Police LT. DANIEL ALBANO; LT. JOHN CONNOLLY; New York Police LT. PATRICK CORTRIGHT; New York Police LT. MARK KEEGAN; New York Police SGT. (First Name Unknown ("FNU")) SALDO, Queens South Task Force; New York Police SGT. EVELYN RIVERA (Shield # 4934); New York Police SGT. (First Name Unknown ("FNU")) HERNANDEZ; New York P.O. JOSEPH LAMENDOLA (Shield #15378); New York P.O. (First Name Unknown ("FNU")) STREMEL; New York P.O. (First Name Unknown ("FNU")) BARNES; New York P.O. (First Name Unknown ("FNU")) VEERAPEN; New York P.O. (First Name Unknown ("FNU")) SIMS; New York P.O. C. GATLING; New York P.O. D. EDWARDS; New York P.O. G. GETHERS; New York P.O. D. JACQUES; New York P.O. (First Name Unknown ("FNU")) CARR; New York P.O. W. CAMPBELL; New York P.O. G. CANCEL; New York P.O. S. FEAGINS; New York P.O. J. HARRISON; New York P.O. P. HARRIS; New York P.O. A. RUBIO; New York P.A. (First Name Unknown ("FNU")) BLAKENEY; New York P.A. (First Name Unknown ("FNU")) WORKS; New York P.A. (First Name Unknown ("FNU")) PAGAN; New York P.A. (First Name Unknown ("FNU")) WILLIAMS-ROBINSON; New York P.A. (First Name Unknown ("FNU")) WILLIAMS-ANDERSON; JAMES DOE 1, Emergency Medical Technician, who conducted a pre-arraignment medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am and whose signature appears at Bates No. TIK (D) 0130; MARTIN F. HORN, Commissioner, New York

City Department of Correction; ROBERT N. DAVOREN, Chief of Department, New York City Department of Correction; New York City Police Supervisors and Commanders RICHARD ROEs 1-50; New York City Department of Correction Supervisors and Commanders ROBERT ROEs 1-50; New York City Police Officers JOHN and JULIE DOES 1-50; New York City Correctional Officers JANE and JAMES DOES 1-50 are NYPD Command and Police Officers and NYDOC Command and Corrections Officers who were involved in the arrest, transport, detention and searches of the plaintiff, and all of the actions and conduct associated therewith, including, *inter alia*, the use of force, the proffering of charges, the approval of charges, the prosecution of plaintiff, the abuse of criminal process, the excessive and unnecessary detention, the sexual harassment and the unlawful searches to which plaintiff was subjected, and the implementation of the challenged policies and practices in question herein, and/or actually arrested, transported, sexually harassed, and/or searched the plaintiff, all without probable cause or lawful justification or privilege, and who implemented the policies, practices, and procedures referenced herein to unreasonably seize, search and detain the plaintiff, or failed to intervene to prevent violations of plaintiff's constitutional rights. They are sued individually and in their official capacities.

32.    Upon information and belief, defendants BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, MONAHAN, PURTELL,    DIECKMANN,    ESSIG,    COLGAN,    GALATI,    LAERA,

DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, RIVERA, HORN, DAVOREN, RICHARD ROEs, and ROBERT ROEs, were personally involved in formulating and/or implementing the policies and procedures that resulted in plaintiff's unlawful arrest, search, incarceration and prosecution.

33.    Defendants BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, MONAHAN, PURTELL, DIECKMANN, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT; JOHNSON; ALBANO, CONNOLLY; CORTRIGHT; KEEGAN; SALDO, RIVERA, HERNANDEZ, LAMENDOLA, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON, JAMES DOE 1, Emergency Medical Technician, who conducted a pre-arraignment medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am and whose signature appears at Bates No. TIK (D) 0130, HORN, DAVOREN, RICHARD ROEs 1-50; New York City Department of Correction Supervisors and Commanders ROBERT ROEs 1-50; New York City Police Officers JOHN and JULIE DOES 1-50; New York City Correctional Officers JANE and JAMES DOES 1-50 are duly sworn, appointed, or acting officers and/or employees and/or agents of the City of New York. They include the individuals who directed and/or authorized the interference with, and/or prevention of, the plaintiff's participation in protected speech, protest, assembly

and association; unreasonable arrest and detention of plaintiff; use of unreasonable and excessive force against plaintiff; unlawful searches of plaintiff; and sexual harassment of plaintiff; and/or actually arrested, transported, detained, used unreasonable and excessive force against, sexually harassed, and/or unlawfully searched the plaintiff, all without probable cause, lawful justification, privilege or consent, and who implemented the policies, practices, and procedures referenced herein to unreasonably detain and search the plaintiff.

34.    At all times relevant herein, defendants BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, MONAHAN, PURTELL, DIECKMANN, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, SALDO, RIVERA, HERNANDEZ, LAMENDOLA, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON, JAMES DOE 1, Emergency Medical Technician, who conducted a pre-arraignment medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am and whose signature appears at Bates No. TIK (D) 0130, HORN, DAVOREN, RICHARD ROEs, ROBERT ROEs, JANE DOEs, JAMES DOEs, JULIA DOEs and JOHN DOEs, either personally or through their subordinates, acted under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or the City of New York.

35.    Each and all of the acts of the defendants alleged herein were undertaken by said defendants while acting in the course and scope of their duties and functions as agents, employees, and officers of the CITY OF NEW YORK and/or the NYPD and/or the NYDOC when engaging in the conduct described herein.

36.    At all times relevant herein, defendants acted for and on behalf of the CITY OF NEW YORK and/or the NYPD and/or the NYDOC, in furtherance of their employment by defendant the CITY OF NEW YORK, with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and/or the NYDOC and/or incidentally to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD and/or the NYDOC.

37.    At all times relevant herein, defendants BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, MONAHAN PURTELL, DIECKMANN, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, SALDO, RIVERA, HERNANDEZ, LAMENDOLA, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON, JOHN OR JANE DOE, Emergency Medical Technician, who conducted a pre-arraignment medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am

17

and whose signature appears at Bates No. TIK (D) 0130, HORN, DAVOREN, RICHARD ROEs, ROBERT ROEs, JANE DOEs, JAMES DOEs, JULIA DOEs and JOHN DOEs, violated clearly established constitutional standards under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution of which a reasonable police officer and/or corrections officer and/or public official under their respective circumstances would have known.

## DEFENDANTS' POLICIES, CUSTOMS, AND PRACTICES

38.     The National Republican Party held its nominating convention, the Republican National Convention ("RNC") in New York City from August 30, 2004 to September 2, 2004.  Well in advance of the RNC, the defendants were aware that numerous demonstrations, both large and small, were planned to coincide with the RNC. In addition to the knowledge gained from the fact that many groups applied to the City for permits to engage in protest during the relevant period, the defendants were in possession, through their own intelligence, as well as intelligence from other law enforcement agencies, of information regarding plans being made by various groups and individuals to demonstrate during the relevant period.

39.     Months before the start of the RNC, the City of New York, through various agencies in the criminal justice system, began to prepare for any arrests and prosecutions that might follow political demonstrations during the RNC. Both Police Commissioner Raymond Kelly and District Attorney Robert Morgenthau publicly stated that potentially more than 1,000 arrests per day might be effected during the RNC. The NYPD also reportedly estimated a potential total of 3,000 arrests during the week of the RNC.

40.     In anticipation of the possibility of mass arrests, the Office of Court Administration ("OCA") more than doubled arraignment capacity, staffing four day arraignment parts, four night arraignment parts, and a midnight shift. The New York County District Attorney's ("NYCDA") office added additional staff and agreed to keep its complaint room open extra hours. The defense bar, including volunteer lawyers affiliated with the National Lawyers' Guild, also committed to fully staffing the additional arraignment parts during the RNC and to act as legal observers in the streets.

41.     Like the OCA and the NYCDA, the NYPD developed contingency plans for responding to the public protests and demonstrations that were expected to take place. Unlike those of the OCA and the NYCDA, the plans developed by the NYPD were designed and intended to slow down the processing of those arrested during the RNC so as to maximize the amount of time that people arrested would spend in detention. Defendants also adopted arrest procedures and tactics, including, *inter alia*, mass arrests of individuals without probable cause and prolonged and unnecessary detention, which were designed and intended to punish and retaliate against individuals who were engaging in political protest, or simply observing or in the vicinity of those engaged in political protest. In addition to being punitive, the procedures and policies adopted by the defendants during the RNC were designed and intended to discourage and prevent political protest, lawful assembly and association, expression, and speech.

42.     The fact that 1,000 arrests per day, or 3,000 arrests in total, might take place ~~each day~~ during the RNC, and that as a result a significant number of

19

arrestees might need to be processed by the NYPD, the NYCDA and the courts did not create exigent circumstances which would justify even temporary interference with individuals' rights under the U.S. Constitution and New York State laws. New York City employs the largest municipal police force in the United States, and sufficient resources were clearly available and within the control of the defendants to enable them to process the expected number of arrestees during the RNC in a timely fashion. While the total number of arrests which took place in the evening of August 31, 2004 – 1,128 – was quite high for any New York City borough, it was smaller than that associated with previous demonstrations, including that which took place on June 14, 1982, when over 1600 protesters were arrested over a period of several hours, processed primarily on buses, and largely released within the same day, and often within several hours.

**Policy to Excessively Detain Individuals Arrested for Minor Offenses**

43.    During the RNC, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEFPNER, SWEET, MARIN-JORDAN, MONAHAN, PURTELL, DIECKMANN, GRAHAM, SMOLKA, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, and ROEs 1-50 implemented a policy, practice or custom of detaining large numbers of individuals engaged in lawful activities without justification for unnecessary and prolonged periods of time in unhealthy and dangerous conditions, thereby preventing them from participating in further demonstration or protest activity, from supporting or

providing services to those engaged in such activities, or from engaging in the normal activities of daily life.

44.    In particular, the defendants implemented arrest procedures intended to, and which did in fact, unreasonably prolong and extend the period of time that plaintiff was held in custody following her arrest. These included, *inter alia*:

A.    The adoption of a "no summons" policy under which everyone arrested in connection with an RNC protest event, no matter how minor the infraction, would be subject to a custodial arrest, rather than being issued a summons on the street;

B.    Having counsel from the NYPD's Legal Bureau review each arrest and assist in the preparation of the on-line booking worksheet before the paperwork was sent to the Office of the District Attorney, including instructing arresting officers to create false accounts of the plaintiff's arrest;

C.    Fingerprinting all of those arrested, even for minor offenses for which fingerprinting is unnecessary; and

D.    Requiring that the results of a criminal background check from both New York State Division of Criminal Justice Services ("DCJS") and the Federal Bureau of Investigation ("FBI") be received by the Manhattan Court Section before each arrestee could be arraigned.

All of these procedures were intended to, and did, unnecessarily and unreasonably extend and prolong the period of time that plaintiff was held in custody.

45.     Plaintiff, like many of the more than 1,800 people arrested immediately prior to and during the RNC, was accused 0f the minor violations of disorderly conduct and parading without a permit, which, under New York State law, do not require fingerprinting of arrestees prior to release with a summons or a Desk Appearance Ticket. Defendants' decision to fingerprint all of those arrested during the RNC, including those arrested for minor offenses, resulted in excessive delay in plaintiff's release and improper entry of her fingerprints into government databases.

46.     Arrests of large numbers of people without probable cause to believe each individual was engaged in violation of any laws or regulations of the State or City of New York were carried out in such a way as to create a pretext for lengthy and punitive detentions of individuals arrested.

47.     Further evidence of defendants' policy, practice, and custom of excessive detention of individuals arrested during the RNC is found in defendants' willful and deliberate defiance of the decisions of two New York State Supreme Court justices during the RNC. Defendants have been ordered to pay substantial fines for violations of these lawful court orders directing the release of arrestees detained unlawfully.

**Defendants' Unconstitutional Mass Arrest Policy**

48.     During the RNC, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57; LEGAL BUREAU SUPERVISOR(S) AT MAPC, MONAHAN, PURTELL, DIECKMANN, GRAHAM, SMOLKA, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT,

JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, SALDO, and ROEs 1-50 implemented policies, practices or customs of indiscriminately arresting without just or probable cause large groups of people who were peacefully assembled, and who were either participating in, supporting, observing, or in the vicinity of demonstrations and protests.

49.    This indiscriminate mass arrest policy was a refinement of the tactic employed by the defendants at other recent demonstrations in the City, including, *inter alia*, the February 15, 2003 protest against the war which is the subject of *Haus, et al. v. City of New York, et al.*, 03 Civ. 4915 (RWS) and the April 7, 2003 protest against the Carlyle Group which is the subject of *Larsen, et al. v. City of New York, et al.*, 04 Civ. 665 (RWS), in which mass arrests were used to unlawfully suppress conduct protected by the First Amendment.

50.    During the RNC, the defendants extended and employed this policy, practice or custom in an arbitrary and capricious manner, in the absence of probable cause, to arrest large groups of people lawfully and peacefully engaged in conduct protected by the First Amendment, or who were simply observing or in proximity such activities at the time the arrests were made.

51.    Defendants' policy of indiscriminate mass arrest involved the following components:

   A.    Use of orange netting, lines of police officers and lines of police bicycles or scooters to corral and essentially trap large groups of people who were engaging, or were perceived by the NYPD as engaging, in political protest or demonstration.

23

B.    Failure to distinguish bystanders, media personnel and legal observers from groups of corralled or trapped people prior to effecting arrests.

C.    Failure to advise prospective arrestees who were behaving in a peaceful and non-violent manner that they were in violation of any law or ordinance.

D.    Failure to give dispersal orders that, if given at all, were audible to all prospective arrestees.

E.    Failure to provide a reasonable opportunity to disperse, including actively preventing people who wanted to disperse from leaving.

F.    Assigning one arresting officer to five arrestees, regardless of whether the officer had seen any of the five individuals prior to their arrest or had even been present at the scene when the decision to arrest was made.

G.    Having arresting officers sign police complaints and swear to criminal court complaints falsely attesting they had witnessed arrestees engaging in conduct that provided a basis for the alleged probable cause when the officers, in fact, had no personal knowledge of the arrestees' conduct.

H.    Review by NYPD Legal Bureau and Criminal Justice Bureau personnel of arresting/assigned officers' paperwork before it was shown to the District Attorney's office for the purpose of insuring that the paperwork was facially sufficient despite the attesting officers' lack of personal knowledge.

I.      Enforcement of the unconstitutionally vague, overbroad and strict liability municipal regulation set forth in New York City Administrative Code 10-110 ("Parading Without a Permit").

52.      Plaintiff was arrested during one such mass arrest which took place on August 31, 2004, during which large numbers of people who were either participating in, observing, or merely in the vicinity of a march which began in Union Square were arrested.

53.      The mass arrest policy employed by the defendants immediately prior to and during the RNC substantially chilled the exercise of First Amendment rights. When police arrest large numbers of people engaged in lawful activity at or near demonstrations, those arrested are far less likely to feel comfortable engaging in protest activity in the future. Moreover, when such arrests take place at a highly publicized event such as the RNC, a message is sent to the public at large that participation in peaceful protest activity is criminal and is likely to lead to arrest.  The resultant "criminalization" of dissent and protest underlies defendants' mass arrest policy and the other policies alleged herein.

**Defendants' Policy, Custom or Practice of permitting widespread sexual harassment of women detainees**

54.      Upon information and belief, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, GRAHAM, SMOLKA, MONAHAN, PURTELL, ESSIG, COLGAN, and ROEs 1-50 engaged in policies, practices or customs which enabled, acquiesced to, or encouraged willful blindness to sexual harassment of women arrestees and detainees by NYPD officers.

55.     As a result, a substantial number of women, including plaintiff, allege that numerous JOHN DOEs and RICHARD ROEs, NYPD officers deployed at several locations, including, *inter alia*, Pier 57 and Manhattan Central Booking, engaged in sexual harassment of women arrestees, including, but not limited to, "cat calls," making lewd gestures and comments toward the women in their custody, and making inappropriate sexual remarks to women detainees.

56.     Upon information and belief, defendants RICHARD ROEs and JOHN and JULIA DOEs were aware of, observed, and/or participated in this conduct but developed, implemented and/or enforced a custom, policy, or practice of enabling, acquiescing, or willfully turning a blind eye to it, failing to intervene, and failing to train, supervise, or discipline officers engaged in such misconduct.

**Defendants' policy, custom, or practice of engaging in unlawful searches of detainees charged with misdemeanor offenses**

57.     Upon information and belief, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, GRAHAM, SMOLKA, MONAHAN, PURTELL, ESSIG, COLGAN, HORN, DAVOREN, , RIVERA and ROEs 1-50 developed, implemented and enforced a policy, practice or custom of subjecting individuals detained on minor offenses to intrusive searches without individualized suspicion that detainees are concealing weapons or contraband.

58.     This policy, practice or custom of engaging in blanket intrusive searches of individuals detained for minor violations is a continuation of policies previously found to be unlawful in two separate class actions (*Tyson v. City of New York* and *McBean v. City of New York*) brought against the City of New

York challenging the NYPD and/or NYDOC's policy, custom or practice of conducting strip and/or overly intrusive searches of individuals detained for minor offenses without a finding of particularized suspicion that they were concealing weapons or contraband, in violation of arrestees' Fourth and Fourteenth Amendment rights. The City entered into settlements with plaintiffs in both actions.

59.     Pursuant to such a policy, practice or custom, plaintiff was subjected to an overly intrusive search which involved moving articles of her clothing including her bra and waistband following her arrest on charges of disorderly conduct and parading without a permit under circumstances which did not give rise to individualized suspicion that she was concealing a weapon or contraband.

### Defendant's policy, custom, or practice of engaging in unlawful searches of transgender detainees

60.     Upon information and belief, defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, GRAHAM, SMOLKA, MONAHAN, PURTELL, ESSIG, COLGAN, RIVERA, HORN, DAVOREN, RICHARD ROEs 1-50, and ROBERT ROEs 1-50 have adopted, implemented and/or enforced a policy, practice or custom of subjecting transgender individuals to invasive and overly intrusive searches of their persons, in the absence of individualized suspicion that they are concealing weapons or contraband, for the sole, improper, and unlawful purpose of ascertaining their genital status.

61.     According to "Stonewalled: Police Abuse and Misconduct Against Lesbian, Gay, Bisexual and Transgender People in the U.S." (Amnesty International 2005), numerous transgender individuals detained by the NYPD and the NYDOC have alleged that they have been subjected to unlawful and invasive searches of their persons, including, but not limited to, unnecessary and inappropriate touching or squeezing of their chest and genital areas, as well as partial and full strip searches, performed in the absence of individualized suspicion that they were concealing weapons or contraband, by NYPD and NYDOC officers acting under color of law, for the expressed purpose of determining their genital status.

62.     Plaintiff, a transgender woman, was, pursuant to such a policy, practice, and/or custom, subjected to a forcible, violent, overly intrusive and invasive search of her person, against her will and without her consent, by defendant RIVERA and JULIE DOE NYPD officers and/or cell attendants and/or JANE DOE correctional officers, acting on orders from defendants ROEs, for the expressed purpose of determining her genital status, during her detention. Upon information and belief, defendants HERNANDEZ, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, and/or WILLIAMS-ANDERSON either conducted, participated in, or failed to intervene to prevent said search.

63.     The policies, practices or custom of defendants CITY OF NEW YORK, BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT

PIER 57; LEGAL BUREAU SUPERVISOR(S) AT MAPC;, GRAHAM, SMOLKA, MONAHAN, PURTELL, DIECKMANN, ESSIG, COLGAN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, RIVERA, HORN, DAVOREN and ROEs 1-50 of (i) making mass arrests of persons lawfully participating in, observing, or in proximity to demonstrations, (ii) instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, (iii) instituting a system of preventive detention to keep lawful, peaceful demonstrators off the streets during the RNC by not issuing summonses or citations to RNC arrestees, and requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of the offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, (iv) detaining those arrested on minor offenses for prolonged and excessive periods of time, (v) subjecting individuals charged with minor violations and misdemeanor offenses to overly intrusive searches including partial and or full strip searches absent individualized suspicion that they are concealing weapons or contraband, and of (vi) subjecting transgender individuals to invasive and overly intrusive searches of their chest and genital areas and/or partial or full strip searches conducted for the expressed purpose of ascertaining genital status violated plaintiff's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, their counterpart provisions in the New York State Constitution, and New York State statutory and common law.

64.    In addition to declaratory relief against the defendants' unconstitutional policies and practices, plaintiff seeks compensatory and punitive

damages for the emotional and physical injuries she suffered which were proximately caused by the defendants' unconstitutional conduct pursuant to these policies, practices and customs, as well as an award of attorneys' fees and costs.

### FACTUAL ALLEGATIONS

65.    Plaintiff KAITLYN TIKKUN is a transgender woman, emergency medical technician, and resident of the City of New York.

66.    Plaintiff was arrested on August 31, 2004 at or about 6:30 p.m. on 16th Street between Union Square East and Irving Place.

67.    At the time of her arrest, Ms. Tikkun was lawfully present at that location, and was not violating any law or order from a police officer.

68.    Defendants ESSIG, DIECKMANN and DOES ordered police officers to form a line across the roadway of Union Square East at the North side of the intersection with East 16th Street. The line of officers directed anyone approaching from the South or West, including plaintiff, to move eastward onto East 16th Street toward Irving Place.

69.    At the direction of defendants ESSIG, DIECKMANN, LAERA, SALDO and DOES, police officers, including defendant LAMENDOLA, closed off egress from the block by forming a line across East 16th Street at Irving Place, the next North-South cross street.

70.    Plaintiff observed NYPD officers, including some of the JOHN DOE and RICHARD ROE defendants, block off the intersection of 16th Street and Irving Place.

30

71.     Another group of NYPD officers, including some of the JOHN DOE and RICHARD ROE defendants, subsequently blocked off the intersection of 16th Street and Union Square East with orange netting, thus preventing all individuals located on the block of 16th Street between Union Square East and Irving Place from leaving the area.

72.     Defendants ESSIG and KEEGAN made the decision to block off 16th Street at Union Square East and at Irving Place.

73.     Defendants ESSIG and DIECKMANN made the decision to arrest every person trapped in this block.

74.     Defendants MONAHAN, LAERA, JOHNSON, CORTRIGHT, SALDO, and LAMENDOLA, along with RICHARD ROE and JOHN DOE defendants, participated in blocking off 16th Street and/or arresting plaintiff.

75.     Plaintiff was standing on the North side of the then sealed block of 16th Street when she heard one of the JOHN DOE/RICHARD ROE defendants say "get everybody."

76.     At no time was plaintiff given an order or meaningful opportunity to disperse, advised that her conduct might be considered unlawful, or advised that her presence or conduct at that location would subject her to arrest.

77.     Shortly thereafter, at the decision and direction of defendants ESSIG and DIECKMANN, plaintiff was handcuffed and placed under arrest, despite defendants' knowledge that they lacked probable cause to do so.

78.     Her arrest was effected without a warrant or probable cause.

79.     Later, defendant NYPD P.O. JOSEPH LAMENDOLA signed a criminal complaint attesting, under the penalty of perjury, that he personally

31

observed Ms. Tikkun of engage in acts he did not witness and that she did not commit.

80.     Defendant LAMENDOLA was instructed by employees of the CITY OF NEW YORK, under the supervision of defendants HAMMERMAN, DOEPFNER, ALBANO, SWEET and MARIN-JORDAN, to create false accounts of plaintiff's arrest.

81.     Upon information and belief, defendant police officers acted pursuant to an unconstitutional mass arrest policy promulgated by defendants and directing them to arrest individuals participating in or perceived to be participating in protests targeting the Republican National Convention.

82.     Upon information and belief, defendants BLOOMBERG, KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, GRAHAM, SMOLKA, PURTELL, ESSIG, COLGAN, MONAHAN, DIECKMANN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, SALDO, were personally involved in formulating and/or implementing the policies and procedures that resulted in plaintiff's unlawful arrest, incarceration, and prosecution.

83.     Defendant police officers deliberately tightened plaintiff's handcuffs excessively and kept plaintiff handcuffed for an excessive period of time, causing plaintiff pain and injury.

84.     When Ms. Tikkun complained about the tightness of her handcuffs to the defendant police officer who handcuffed her, he merely told plaintiff that she would "get them off soon."

85.     Ms. Tikkun subsequently remained handcuffed for several hours, causing pain and numbness in her right hand for several weeks.

86.     Following her arrest, plaintiff was placed on a city bus to be transported to Pier 57 by defendant police officers.

87.     NYPD officer JULIE DOE 1, the operator of the bus Ms. Tikkun was directed to board, drove at excessive speeds through city streets, striking two parked and one moving vehicle during plaintiff's transport from Union Square and Pier 57, causing plaintiff to be placed in considerable fear for her safety.

88.     As the bus plaintiff was riding on waited to enter Pier 57, several JOHN DOE/RICHARD ROE NYPD officers standing on a ramp to the left of the bus made numerous lewd comments and gestures to the women on the bus, including plaintiff.

89.     Plaintiff was subsequently transported to Manhattan Central Booking and directed to get off the bus and line up at the entrance to the facility.

90.     Plaintiff, along with other women who were transported on the same bus, was directed to line up in front of a line of JOHN DOE/RICHARD ROE NYPD police officers in full riot gear.

91.     Several of the DOE/ROE officers made lewd comments and gestures to the group of women detainees.

92.     While detained at Manhattan Central Booking, plaintiff was subjected to unreasonable overcrowding, denial of access to necessary medication and medical attention, denial of adequate food and water, denial of access to adequate toilet facilities, and/or denial of access to counsel.

93.    Plaintiff was held and detained in police custody for approximately 24 hours.

94.    Plaintiff, along with a number of women with whom she was detained, was subjected by defendant RIVERA, and, upon information and belief, by HERNANDEZ, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON and/or JANE and/or JULIE DOE defendants, to an overly intrusive search, during which, in front of the other detainees, all of the women were directed to lift up their bras under their shirts and pull out their waistbands for inspection.

95.    At some point after all of the women she had been transported with had been removed from the cell where she was being held, officer JANE or JULIE DOE 2 approached Ms. Tikkun and asked whether plaintiff had had "an operation."

96.    Shortly thereafter, officer JANE or JULIE DOE 2 told plaintiff she would be searched in order to determine if she was "a boy or a girl."

97.    Plaintiff was subsequently removed from the cell and taken to an area surrounded by temporary partitions.

98.    As Ms. Tikkun begged the officers not to forcibly search her because she had experienced rape in the past, she was shoved up against a wall and her arms were restrained by defendant RIVERA along with, upon information and belief, defendants HERNANDEZ, STREMEL, BARNES, VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR, CAMPBELL, CANCEL,

FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY, WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON and/or JANE and/or JULIE DOE defendants, who conducted, participated in or failed to intervene in such conduct.

99.     One of the defendants listed in ¶96 above and/or JANE and/or JULIE DOE officers then shoved her leg between plaintiff's legs while she and/or another officer touched plaintiff's breasts and forced her hand down plaintiff's pants, touching her genital area.

100.     In response to Ms. Tikkun's protests regarding her treatment by the officers, defendants listed in ¶96 above and/or JANE and/or JULIE DOE officers simply responded that they were "just following orders."

101.     Upon information and belief, defendant officers listed in ¶96 above were acting pursuant to direction from defendant RIVERA and/or supervising RICHARD and/or ROBERT ROEs and/or were acting pursuant to an unconstitutional search policy, practice or custom of the NYPD and/or NYDOC directing them to conduct unlawful, invasive and intrusive searches of transgender individuals, using excessive force if necessary, for the purpose of determining genital status.

102.     Plaintiff was subsequently placed in a holding cell by herself. After some time, defendant RIVERA, or one of the defendants listed in ¶96 above, asked Ms. Tikkun if she minded if women detainees were placed in the holding cell with her. Ms. Tikkun answered "go right ahead."

103.     Ms. Tikkun was subsequently shackled to other detainees for several hours, causing additional pain and numbness in her wrists.

104.    As Ms. Tikkun awaited medical review, JANE OR JULIE DOE 5 asked her "who do you have sex with? What's your sexual orientation?" Plaintiff responded that she was a lesbian, in response to which the officer asked "are you a girl lesbian or a boy lesbian?"

105.    When plaintiff was taken to JAMES DOE 1, the individual who conducted the pre-arraignment medical screening of plaintiff on September 1, 2004 at or about 7:12 a.m., it became apparent to Ms. Tikkun that one of defendants listed in ¶96 above or LAMENDOLA and/or JANE or JULIE DOES 2-5 had breached her confidentiality by disclosing her transgender status to JAMES DOE 1, as he greeted her by saying "oh, you're the one."

106.    JANE or JULIE DOE 5 and JAMES DOE 1 subsequently asked Ms. Tikkun to sign a document requesting placement in protective custody. When Ms. Tikkun inquired as to why she was being asked to sign the document, she was told that it was necessary in order to "house" her with the "appropriate population." When Ms. Tikkun responded that she was currently housed with the "appropriate population," JANE or JULIE DOE 5 told her that she was not.

107.    When Ms. Tikkun was taken to be photographed, it once again became apparent that confidentiality had been breached with respect to her transgender status, as JAMES or JOHN DOE 2, one of the officers assigned to photograph detainees, said to her "oh, you're the one they're trying to find out if you're a boy or a girl."

108.    Defendants initiated criminal proceedings against plaintiff despite defendants' knowledge that they lacked probable cause to do so.

109.    During the period between August 31, 2004 and a date no later than November 28, 2004, Ms. Tikkun was required to make several court appearances to defend herself in the criminal proceedings that defendants had initiated against her.

110.    On a date no later than November 28, 2004, all charges against Ms. Tikkun were dismissed.

111.    As a direct and proximate result of defendants' actions pursuant to wrongful policies, practices, customs and/or usages complained of herein, Ms. Tikkun has suffered, *inter alia*, physical, mental, and emotional injury and pain, violation of her right to privacy, mental anguish, suffering, humiliation and embarrassment, and deprivation of her constitutional rights.

## FEDERAL CAUSES OF ACTION

### First Claim for Relief
### Deprivation of Federal Civil Rights in Violation of 42 U.S.C. § 1983

112.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 95 113 with the same force and effect as if fully set forth herein, and incorporating them by reference.

113.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs punishing peaceful protest during the RNC through, *inter alia*, mass unlawful arrests without probable cause, institution of a system of preventative detention to keep lawful and peaceful demonstrators off the streets during the RNC, and subjecting those arrested to prolonged detention, unsanitary, intolerable, and inhuman conditions of detention, unlawful and unwarranted strip searches and invasive and overly

intrusive searches of their person, the defendants, acting under pretense and color of state law, in their individual and official capacities, within the scope of their employment, have deprived and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the rights guaranteed by the First, Fourth, Fifth, Sixth, ~~Eighth~~ and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

114.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and/or corrections officers, with all of the actual and/or apparent authority attendant thereto.

115.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police and/or corrections officers, pursuant to the customs, usages, practices, procedures and the rules of the City of New York, the New York City Police Department, the New York City Department of Corrections, all under the supervision of ranking officers of said departments.

116.     Defendants, collectively and individually, while acting under the color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority which is forbidden by the United States.

117.     As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages, including, *inter alia*, deprivation of liberty, violation of the right to privacy and to be free of unreasonable search and seizure, physical and mental pain and suffering and mental anguish.

**Second Claim for Relief**
**False Arrest in Violation of 42 U.S.C. § 1983**

118.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 119 with the same force and effect as if fully set forth herein, and incorporating them by reference.

119.    As a result of the heretofore described conduct by defendants, plaintiff was subjected to an illegal, improper and false arrest by defendants, and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

120.    By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia*, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention, including a "no summons" policy, to keep lawful peaceful demonstrators off the streets during the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offense and the arrestees' possession of valid identification in violation of New York Criminal Procedure Law § 160.10, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law and in their individual and official capacities and within the scope of their employment, have and will continue to deprive plaintiff of rights, remedies, privileges and immunities guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

121.     As a direct and proximate result of the foregoing, plaintiff was placed in substantial and prolonged fear for her safety, her liberty was restricted for an extended period of time, she was subjected to handcuffs and other physical restraints, as well as to a humiliating and degrading and overly intrusive and invasive search and to a violent and forcible invasive and intrusive search of her person, without probable cause or other lawful justification, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and their counterparts under the New York State Constitution, and has suffered and will continue to suffer injury and damages as a result, including, *inter alia*, physical and mental pain and suffering, and mental anguish.

## Third Claim for Relief
## Malicious Prosecution in Violation of 42 U.S.C. § 1983

122.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 123 with the same force and effect as if fully set forth herein, and incorporating them by reference.

123.     Defendants misrepresented and falsified evidence before the District Attorney.

124.     Defendants did not make a complete and full statement of facts to the District Attorney, and withheld exculpatory evidence from the District Attorney.

125.     Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

126.     Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

127.    Defendants acted with malice in initiating criminal proceedings against plaintiff.

128.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

129.    Defendants lacked probable cause to continue criminal proceedings against plaintiff.

130.    Defendants acted with malice in continuing criminal proceedings against plaintiff.

131.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

132.    Notwithstanding the perjurious and fraudulent conduct of the defendants, the criminal proceedings against plaintiff were terminated in Ms. Tikkun's favor on a date no later than November 28, 2004, when all charges against her were dismissed.

### Fourth Claim for Relief
### Malicious Abuse of Process in Violation of 42 U.S.C. § 1983

133.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 134 with the same force and effect as if fully set forth herein, and incorporating them by reference.

134.    Defendants issued legal process to place plaintiff under arrest.

135.    Defendants arrested plaintiff in order to achieve a collateral objective beyond the legitimate ends of the legal process.

136.    Defendants acted with intent to do harm to plaintiff without excuse or justification.

41

137.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages, including, *inter alia*, physical and mental pain and suffering, and mental anguish.

**Fifth Claim for Relief**
**Excessive Force in Violation of 42 U.S.C. § 1983 and**
**the Fourth Amendment of the Constitution**

138.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 139 with the same force and effect as if fully set forth herein, and incorporating them by reference.

139.    The level of force employed by defendants listed in ¶96 above, LAMENDOLA, and JOHN DOES against Ms. Tikkun was objectively unreasonable and violated plaintiff's constitutional rights.

140.    As a result of the aforementioned conduct of the defendants, plaintiff was subjected to excessive force and sustained physical and emotional injuries.

**Sixth Claim for Relief**
**Unlawful Search in Violation of 42 U.S.C. § 1983 and**
**the Fourth Amendment**

141.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 142 with the same force and effect as if fully set forth herein, and incorporating them by reference.

142.    During her confinement pursuant to the policies and practices described herein, Ms. Tikkun was subjected to unreasonable, intrusive, and forcible searches of her person for unlawful purposes in violation of her constitutional rights.

143.    The searches complained of herein were conducted pursuant to unconstitutional policies, customs, practices or usages of the defendants.

144.    In conducting such unlawful searches, defendants violated and will continue to violate plaintiff's rights to be free from unreasonable search and seizure and deprived her of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. 1983.

145.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages, including, *inter alia*, physical and mental pain and suffering, and mental anguish.

### Seventh Claim for Relief
### Denial of Equal Protection in Violation of 42 U.S.C. § 1983 and
### the Fourteenth Amendment Based on Sex and Sexual Orientation

146.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 147 with the same force and effect as if fully set forth herein, and incorporating them by reference.

147.    The conduct of defendants listed in ¶¶ 58, 96 above as heretofore described was motivated by animus against Ms. Tikkun on the basis of sex and sexual orientation.

148.    Defendants listed in ¶¶ 58, 96 above acted with intent to treat plaintiff disparately on the basis of sex and sexual orientation.

149.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury

and damages, including, *inter alia*, physical and mental pain and suffering, and
mental anguish.

## Eighth Claim For Relief
### Violation of the First Amendment of the U.S. Constitution and
### 42 U.S.C. § 1983

150.    Plaintiff repeats, reiterates and realleges each and every allegation
contained in paragraphs numbered 1 through 151 with the same force and effect
as if fully set forth herein.

151.    The arrest and detention of plaintiff was intended to, and did, chill
plaintiff's right to assemble peaceably.

152.    The arrest and detention of plaintiff was intended to, and did, chill
plaintiff's right to free speech.

153.    The arrest and detention of plaintiff was intended to, and did, chill
plaintiff's right to petition the government for a redress of grievances.

154.    Plaintiff was denied Desk Appearance Ticket and/or summons in
retaliation to her exercise of her First Amendment rights.

## Ninth Claim for Relief
### Denial of Equal Protection in Violation of 42 U.S.C. § 1983 and
### the Fourteenth Amendment Based On Perceived Participation in
### RNC-Related Protests

155.    Plaintiff repeats, reiterates and realleges each and every allegation
contained in paragraphs 1 through 156 with the same force and effect as if fully
set forth herein, and incorporating them by reference.

156.    Plaintiff was not considered for a Desk Appearance Ticket and/or
summons.

157.    Other individuals arrested on August 31, 2004 who were not perceived to have been participating in RNC-related protests were considered for Desk Appearance Tickets and/or summons.

158.    In failing to consider plaintiff for a Desk Appearance Ticket and/or summons because of her perceived participation in RNC-related protests, defendants violated plaintiff's right to equal protection and deprived her of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

159.    As a result of the foregoing, plaintiff was detained for an excessive period of time.

**Tenth Claim For Relief**
**Conditions of Confinement Under 42 U.S.C. § 1983**

160.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 161 with the same force and effect as if fully set forth herein.

161.    Plaintiff was subjected to unlawful conditions of confinement including, but not limited to, exposure to toxic substances, unreasonable overcrowding, extremes of heat and/or cold, denial of access to necessary medication and medical attention, denial of adequate food and water, denial of bathroom facilities, and/or denial of access to counsel.

162.    As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, and deprivation of her constitutional rights.

**Eleventh claim for relief**
**Failure to Intervene in Violation of 42 U.S.C.§ 1983**

163.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 164 with the same force and effect as if fully set forth herein.

164.    Each and every individual defendant had an affirmative duty to intervene on plaintiff's behalf to prevent the violation of her constitutional rights.

165.    The individual defendants failed to intervene on plaintiff's behalf to prevent the violation of her constitutional rights incurred by her false arrest, illegal and overly intrusive searches and excessive detention despite having had a realistic opportunity to do so.

166.    As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated.

**Twelfth Claim For Relief**
**Denial Of Constitutional Right To Fair Trial**
**In Violation of 42 U.S.C. § 1983**

167.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 168 with the same force and effect as if fully set forth herein.

168.    Defendants created false evidence against plaintiff.

169.    Defendants forwarded false evidence to prosecutors in the New York County District Attorney's office.

170.    Defendants misled judges, and/or prosecutors by providing false testimony and proffering false evidence throughout the criminal proceedings.

171.   In creating and forwarding false information to prosecutors, defendants violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

### Thirteenth Claim for Relief
### Municipal Liability Pursuant to 42 U.S.C. § 1983

172.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 173 with the same force and effect as if fully set forth herein, and incorporating them by reference.

173.   Defendants, collectively and individually, while acting under color of state law, engaged in conduct that amounted to a custom, usage, practice, procedure or rule of the respective municipality/authority which is forbidden by the Constitution of the United States.

174.   The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department included, but were not limited to, (i) making mass arrests of persons lawfully participating in, observing, or in proximity to peaceful demonstrations; (ii) arresting individuals for peacefully participating in a political protest or for simply being in the vicinity of a political protest; (iii) using unnecessary force in taking individuals into custody (iv) deliberately handcuffing detainees too tightly; (iv) denying Desk Appearance Tickets and/or summonses; (v) detaining those arrested on minor offenses for prolonged and excessive periods of time; (vi) falsifying documents, videotapes, evidence, and testimony; (vii) enforcement of an unconstitutional statute, New York City Administrative Code section 10.110,

Parading Without a Permit; (viii) unconstitutional application of the Parading Without a Permit statute; (ix) enforcement of an unconstitutional statute, Penal Law section 240.20(5) Disorderly Conduct (obstructing pedestrian or vehicular traffic); (x) the unconstitutional application of the Disorderly Conduct Statute , subsection 5; (xi) fingerprinting all RNC arrestees; (xii) making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn criminal court charging instruments, and at criminal trials; (xiii) subjecting individuals charged with minor violations and misdemeanor offenses to strip searches absent individualized suspicion that they are concealing weapons or contraband; and (xiv) subjecting transgender individuals to invasive searches of their chest and genital areas and/or partial or full strip searches conducted for the expressed purpose of ascertaining genital status.

175.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, the New York City Police Department, and the New York City Department of Corrections, demonstrate deliberate indifference to the safety, well-being, and constitutional rights of plaintiff.

176.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

177.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

## Fourteenth Claim for Relief
## Supervisory Liability For Deprivation of Rights Under the United
## States Constitution and 42 U.S.C. §§ 1981 and 1983

178.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 179 with the same force and effect as if fully set forth herein.

179.    By their conduct in failing to remedy the wrongs committed by employees of the THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline employees of the THE CITY OF NEW YORK under their supervision; and in directing employees under their supervision, defendants KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET, MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, PURTELL, ESSIG, COLGAN, MONAHAN, DIECKMANN, GALATI, LAERA, DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN, RIVERA, HORN, DAVOREN, RICHARD ROEs, ROBERT ROEs, acting under the color of state law and in their individual and official capacities and within the scope of their employment, caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, Fifth Sixth, and Fourteenth Amendments.

180.    As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress

and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### Fifteenth Claim for Relief
### New York City Administrative Code Section 10.110,
### Parading Without A Permit, Is Unconstitutional

181.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 182 with the same force and effect as if fully set forth herein.

182.    New York City Administrative Code section 10.110, Parading Without a Permit, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment, and is unconstitutionally vague and overbroad, in that it permits police officers to apply the statute to protected First Amendment activity on public sidewalks.

183.    As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and was otherwise damaged and injured.

### Sixteenth Claim for Relief
### New York Penal Law Section 240.20, Subsection 5,
### Is Unconstitutional

184.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 185 with the same force and effect as if fully set forth herein, and incorporating them by reference.

185.    Subsection 5 of the Disorderly Section Statute, on its face, violates the First Amendment and the Due Process Clause of the Fourteenth Amendment in that it does not require that the police either (a) give a lawful order to disperse,

and an opportunity to comply, before arresting persons gathered for the purpose of peaceful protest, or (b) have probable cause to believe that the persons arrested intended to substantially obstruct traffic.

186.    As a result of the foregoing, plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

187.    All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

A.    Not to be deprived of liberty without due process of law;

B.    To be free from seizure and arrest not based upon probable cause;

C.    Not to be subjected to excessive force;

D.    To be free from unlawful search;

E.    To be free from unwarranted and malicious criminal prosecution;

F.    To be free from malicious abuse of process;

G.    To exercise her First Amendment rights;

H.    Not to be subjected to unlawful conditions of confinement;

I.    Not to be subjected to cruel and unusual punishment; and

J.    To receive equal protection under the law.

188.    As a direct and proximate result of the policies, practices and customs described above, plaintiff was unlawfully arrested and detained, and has suffered and will continue to suffer injury and damages, including, *inter alia*, physical and mental pain and suffering and mental anguish, and is entitled to

compensatory damages to be determined at trial and punitive damages against the individual defendants to be determined at trial.

## PENDANT STATE CLAIMS

189.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 190 with the same force and effect as if fully set forth herein.

190.    On or about November 29, 2004, and within ninety (90) days after the claim herein accrued, plaintiff duly served upon, presented to and filed with the City of New York, a municipality and the entity that employs defendants JOHN, JULIE and JANE DOEs 1-50 and RICHARD and ROBERT ROEs, by personal delivery of the notice in duplicate, to the person designated by law as one to whom a summons issued against such party may be delivered in an action in the Supreme Court, a Notice of Claim setting forth all facts and information required under General Municipal Law § 50-e.

191.    At least thirty (30) days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

192.    The City of New York demanded a hearing pursuant to General Municipal Law.

193.    A hearing was held in this matter pursuant to General Municipal law § 50-h on June 16, 2005.

194.    Plaintiff has complied with all conditions precedent to maintaining the instant action.

195.    This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

196.    This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### First Claim For Relief Under New York State Law – False Arrest

197.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 198 with the same force and effect as if fully set forth herein.

198.    Defendant police officers arrested plaintiff in the absence of probable cause and without a warrant.

199.    As a result of the aforesaid conduct by defendants, plaintiff was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings.

200.    As a direct and proximate result of the aforesaid actions by the defendants, plaintiff was deprived of her constitutional rights, and suffered and will continue to suffer injury and damages, including, *inter alia*, physical and mental pain and suffering and mental anguish.

### Second Claim for Relief under New York State Law - False Imprisonment

201.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 202 with the same force and effect as if fully set forth herein.

202.    As a result of the foregoing, plaintiff was falsely imprisoned, her liberty was restricted for an extended period of time, she was put in fear for her

safety, and was humiliated and subjected to a partial strip search, as well as a forcible and intrusive search of her person, handcuffs and other physical restraints.

203.   Plaintiff was conscious of said confinement and did not consent to same.

204.   Plaintiff's confinement was without probable cause and was not otherwise privileged.

205.   As a result of the aforementioned conduct, plaintiff has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### Third Claim for Relief under New York State Law – Assault

206.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 207 with the same force and effect as if fully set forth herein.

207.   Defendants' aforementioned actions placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

208.   As a result of the aforementioned conduct, plaintiff has suffered physical pain and mental anguish, together with apprehension, fright, embarrassment, humiliation, and shock.

### Fourth Claim for Relief under New York State Law – Battery

209.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 210 with the same force and effect as if fully set forth herein.

210.    With force and violence, against plaintiff's will, and without privilege, lawful justification, or consent, JANE DOEs #1-3 physically restrained Ms. Tikkun and subjected her to an invasive search of her person, during which they touched plaintiff's body, breasts and genital area in a harmful and offensive manner.

211.    Defendants' actions were willful, intentional, and unwarranted, and without just cause or provocation.

212.    In so doing, defendants were acting in their individual and official capacities, within the scope of and in furtherance of their employment, and upon orders from their superior officers ROBERT ROEs #1-50.

213.    As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered and will continue to suffer injury and damages, including, *inter alia*, physical and mental pain and suffering, mental anguish, shock, fear, apprehension, violation of her right to privacy, embarrassment and humiliation.

214.    By reason of the willful, reckless and malicious conduct of the defendants, the plaintiff is entitled to recover punitive damages.

### Fifth Claim for Relief under New York State Law – Malicious Prosecution

215.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 216 with the same force and effect as if fully set forth herein.

216.    On or about August 31, 2004, the defendant the CITY OF NEW YORK, its agents, servants and employees, and the aforesaid defendant police

officers commenced a criminal proceeding against plaintiff, and falsely and maliciously, and without probable cause, charged plaintiff with crimes.

217.   Defendants, with the consent and participation of one another, continued said proceeding despite the fact that they knew or should have known that plaintiff had not committed any crimes, that there were no exigent circumstances justifying a warrantless arrest, and that there was no need for the arrest and imprisonment of plaintiff.

218.   Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

219.   Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

220.   Defendants were motivated by actual malice in initiating criminal proceedings against plaintiff.

221.   Defendants misrepresented and falsified evidence before the District Attorney.

222.   Defendants did not make a complete and full statement of facts to the District Attorney.

223.   Defendants withheld exculpatory evidence from the District Attorney.

224.   Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

225.   Defendants lacked probable cause to continue criminal proceedings against plaintiff.

226.   Defendants were motivated by actual malice in continuing criminal proceedings against plaintiff.

227.   Notwithstanding the perjurious and fraudulent conduct of defendants, proceedings against plaintiff were terminated in her favor, and all charges against plaintiff were dismissed on a date no later than November 28, 2004.

**Sixth Claim for Relief under New York State Law –
Malicious Abuse of Process**

228.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 229 with the same force and effect as if fully set forth herein.

229.   Defendant police officers issued legal process to place plaintiff under arrest.

230.   Defendant police officers arrested plaintiff to attain a collateral objective beyond the legitimate ends of the legal process.

231.   Defendant police officers acted with intent to do harm to plaintiff, without excuse or justification.

232.   As a result of the aforementioned conduct, plaintiff suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

**Seventh Claim for Relief under New York State Law –
Intentional Infliction of Emotional Distress**

233.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 234 with the same force and effect as if fully set forth herein.

234.   The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

235.   The aforementioned conduct was committed by employees, servants and/or agents of defendants THE CITY OF NEW YORK, while acting within the scope of their employment.

236.   The aforementioned conduct was committed by employees, servants and/or agents of defendants THE CITY OF NEW YORK while acting in furtherance of their employment.

237.   The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff.

238.   As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, physical and mental injury, together with invasion of privacy, embarrassment, humiliation, shock, fright and loss of freedom.

### Eighth Claim for Relief under New York State Law – Negligent Infliction of Emotional Distress

239.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 240 with the same force and effect as if fully set forth herein.

240.   The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

241.   The aforementioned conduct was negligent and caused severe emotional distress to plaintiff.

242.    The aforementioned conduct was committed by employees, servants and/or agents of defendants THE CITY OF NEW YORK while acting within the scope of their employment.

243.    The aforementioned conduct was committed by employees, servants and/or agents of defendants THE CITY OF NEW YORK while acting in furtherance of their employment.

244.    As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### Ninth Claim for Relief Under New York State Law – Discrimination in Violation of N.Y. CLS Civ. R. § 40-c

245.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 246 with the same force and effect as if fully set forth herein.

246.    Defendants, in the course of the aforementioned conduct, harassed and discriminated against plaintiff on the basis of, *inter alia*, sex, sexual orientation, and disability.

247.    Plaintiff, simultaneous with filing of this Complaint, serves notice of her claim pursuant to N.Y. CLS Civ. R. § 40-c on the Attorney General of the State of New York.

248.    Plaintiff has met all jurisdictional prerequisites for assertion of a claim pursuant to N.Y. CLS Civ. R. § 40-c.

249.   As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, physical and mental injury, invasion of privacy, together with embarrassment, humiliation, shock, fright and loss of freedom.

### Tenth Claim for Relief under New York State Law – *Prima Facie* Tort

250.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 251 with the same force and effect as if fully set forth herein.

251.   Defendants, by the aforesaid conduct, inflicted harm upon plaintiff.

252.   The aforesaid conduct of defendants was intentional.

253.   The aforesaid conduct of defendants was without any excuse or justification.

254.   As a result of the conduct of defendants, plaintiff sustained, *inter alia*, severe physical and emotional injuries and special damages.

### Tenth Claim for Relief under New York State Law – Negligent Hiring and Retention

255.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered 1 through 256 with the same force and effect as if fully set forth herein.

256.   Upon information and belief, defendant CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the aforesaid defendants who authorized, conducted and participated in the arrest of plaintiff.

257.   Defendant CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of ~~the~~ defendants KELLY, ESPOSITO, ESTAVILLO, DEVLIN, HAMMERMAN, DOEPFNER, SWEET,

MARIN-JORDAN, LEGAL BUREAU SUPERVISOR(S) AT PIER 57, LEGAL
BUREAU SUPERVISOR(S) AT MAPC, GRAHAM, SMOLKA, MONAHAN,
PURTELL, DIECKMANN, ESSIG, COLGAN, GALATI, LAERA,
DEENTREMONT, JOHNSON, ALBANO, CONNOLLY, CORTRIGHT, KEEGAN,
SALDO, RIVERA, HERNANDEZ, LAMENDOLA, STREMEL, BARNES,
VEERAPEN, SIMS, GATLING, EDWARDS, GETHERS, JACQUES, CARR,
CAMPBELL, CANCEL, FEAGINS, HARRISON, HARRIS, RUBIO, BLAKENEY,
WORKS, PAGAN, WILLIAMS-ROBINSON, WILLIAMS-ANDERSON, JAMES
DOE 1, Emergency Medical Technician, who conducted a pre-arraignment
medical screening of Kaitlyn Tikkun on September 1, 2004 at or about 7:12 am
and whose signature appears at Bates No. TIK (D) 0130, HORN, DAVOREN,
JOHN, JULIE, JAMES and JANE DOEs #1-50 and ROBERT and RICHARD
ROEs #1-50 to engage in the wrongful conduct heretofore alleged in this
Complaint.

258.   As a direct and proximate result of the aforementioned conduct,
plaintiff suffered severe emotional distress, physical and mental injury, mental
anguish, and invasion of privacy, together with embarrassment, humiliation,
shock, fright and loss of freedom.

### Eleventh Claim for Relief under New York State Law – Negligent Training and Supervision

259.   Plaintiff repeats, reiterates and realleges each and every allegation
contained in paragraphs numbered 1 through 204 with the same force and effect
as if fully set forth herein.

61

260.    Upon information and belief, the defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid defendants who authorized, conducted and participated in the arrest of plaintiff.

**WHEREFORE**, plaintiff respectfully requests that this Court:

A.    Enter a judgment declaring unconstitutional defendants' policies, practices and/or customs of a) engaging in overly intrusive searches, including partial and full strip searches, of individuals accused of minor offenses without individualized suspicion and b) subjecting transgender individuals to searches of their chest and genital areas conducted for the expressed purpose of ascertaining genital status.

B.    Grant injunctive relief requiring defendants to return to plaintiff, or where necessary to expunge and/or destroy all records of fingerprints taken in conjunction with her arrest and all other information or records concerning her arrest, to remove from all records and databases maintained by defendants any reference to plaintiff's arrest, and to request that all law enforcement agencies that received information concerning plaintiff's arrest destroy such information.

C.    Award plaintiff compensatory damages in an amount to be determined at trial.

D.    Award punitive damages against the individual defendants in an amount to be determined at trial.

E.    Award the plaintiff reasonable attorneys' fees and costs.

F.     Grant such other and further relief as this court shall find as appropriate and just.

Dated:          New York, New York
                August 30, 2007


                                        Respectfully submitted,


                                        _____/s_____
                                        ANDREA J. RITCHIE (AR 2769)
                                        428 Park Place, 2B
                                        Brooklyn, NY 11238
                                        (646) 831-1243


                                        _____/s_____
                                        ROSE M. WEBER (RW 0515)
                                        225 Broadway, Suite 1608
                                        New York, New York 10007
                                        (212) 748-3355