UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

RNC CONSOLIDATED CASES (RJS) (JCF)

-----------------------------------------------------------------x

**DEFENDANTS' CONSOLIDATED REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR OBJECTIONS TO THE ORDER
OF MAGISTRATE JUDGE JAMES C. FRANCIS IV GRANTING
<u>PLAINTIFFS' MOTIONS TO AMEND THEIR COMPLAINTS</u>**

**MICHAEL A. CARDOZO**
**Corporation Counsel of the City of New York**
*Attorneys For Defendants*

**James Mirro**
**Raju Sundaran**
**Special Federal Litigation**
**100 Church Street, Room 3-130**
**New York, New York 10007**
**212.788.8026 (ph)**
**212.788.9776 (fax)**

**APRIL 7, 2008**

## ARGUMENT

Defendants submit this reply memorandum in further support of their Rule 72 objections filed on February 25, 2008 ("Defendants' Appeal Brief"). Plaintiffs responded in a consolidated brief dated March 17, 2008 ("Plaintiffs' Brief"). In that Brief, plaintiffs have offered no opposition to many of the arguments made by defendants. Where they have responded, they have frequently misstated the applicable law or facts, which we address here.

## I.
### The Magistrate Judge's Discretion
### Is Expressly Limited By The Federal Rules

In their preliminary statement, plaintiffs wrongly argue that the Magistrate Judge's order should not be reversed because "granting permission to amend is, under any circumstances, a discretionary decision." Plaintiffs' Brief at 1. Plaintiffs misstate the law. The Magistrate Judge's discretion is expressly limited by Rule 72, which provides that "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Rule 72(a); see also MacNamara, et al. v. The City of New York, et al., 2008 WL 858679 (S.D.N.Y. 2008) (RJS).[1]

## II.
### Defendants Have Preserved Their Objections

Plaintiffs wrongly argue that the defendants "improperly raise numerous arguments for the first time" including the arguments that the amendments were proposed out of time, that defendants are prejudiced by them and that the claims against Cohen are insufficiently

---

[1] The Magistrate Judge's discretion is even more circumscribed with respect to dispositive issues. As to such issues, "the district judge [shall] make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition" to which defendants have objected. Rule 72(b).

pled. Plaintiffs' Brief at 1 & n.1. In defendants' brief opposing amendment of the 37 complaints ("Brief Below," Exhibit "D"), defendants repeatedly pointed to plaintiffs' "undue delay" in seeking to amend. See, e.g., Brief Below at 1-4.[2] Indeed, in the first line of their Brief Below, defendants wrote that "Just a few months prior to the close of discovery, plaintiffs belatedly move for leave to file amended complaints adding numerous new defendants and a variety of newly asserted federal and state law claims." Brief Below at 1 (emphasis added). Defendants quoted a recent Southern District case that expressly contemplated whether "the motion to amend is timely within the context of the Court's prior scheduling orders." Brief Below at 4 (emphasis added), quoting Silkroad Associates, Ltd. v. Junior Gallery Group, Inc., 1991 WL 51103 (S.D.N.Y. 1991) (Haight, J.).

Defendants also argued that plaintiffs' proposed amendments should be denied because they would result in "undue prejudice" to defendants. See, e.g., Brief Below at 1-4, citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971) (district court should examine the nonmoving party's time and expenses spent preparing for trial in reliance on prior pleadings and the potential expenses necessary to address issues raised by proposed amendments). In addition, defendants asserted that plaintiffs' proposed amendments were "futile." See, e.g., Brief Below at 1-4. Defendants made these objections applicable to each of the proposed amendments. See, e.g., Brief Below at 1 n.1 ("Defendants have objections to all of the plaintiffs' complaints as set forth herein, except Schiller and Dinler"). Contrary to plaintiffs' argument, there was no need for defendants to repeat each of these arguments as to each of the 37 proposed complaints and as to each and every new claim and new party that plaintiffs sought

---

[2] Exhibits "A" through "F" are attached to the Declaration of Raju Sundaran dated February 25, 2008; exhibits "G" through "S" are attached to the Declaration of Raju Sundaran dated April 7, 2008.

to add to those complaints. In short, defendants have not raised "new" arguments on appeal and plaintiffs have cited no authority that supports their view.[3]

### III.
#### By Overlooking Plaintiffs' Delays In Seeking The Amendments, Plaintiffs' Seriatim Prior Amendments, The Resulting Prejudice To Defendants, And Applicable Law Requiring Consideration Of Such Factors, The Order Was Clearly Erroneous And Contrary To Law

In their Appeal Brief, defendants identified a series of material errors committed by the Magistrate Judge that resulted in the order now on appeal. Defendants recited that the Magistrate Judge failed to consider the deadlines for amendment of the complaints contemplated by Judge Karas' orders and by the CMOs; failed to consider that those deadlines had expired long before the plaintiffs filed their motions to amend; failed to consider the applicable legal standard ("good cause") set forth in the CMOs themselves and in Rule 16 for amending the CMOs to permit the amendments; failed to find "good cause" for the amendment of the CMOs; instead reversed the burden and required defendants to show "prejudice" by the proposed amendments; failed to properly consider the applicable standards under Rule 15; and, in particular, failed to take into account the plaintiffs' undue delay in making their motions, the fact that they could have pleaded these same claims much earlier in the litigation (if not at the outset), the fact that plaintiffs elected not to incorporate their proposed amendments into any of the numerous prior amendments permitted them, and that the prejudice to defendants was multiplied by the 37 cases in which the amendments were permitted. See Appeal Brief at 5-15 & n.7.

---

[3] The cases cited by plaintiffs, which stand for the unremarkable proposition that an objecting party may not raise new arguments (those not raised before the Magistrate Judge) on appeal, are not instructive here. See Robinson v. Keane, 1999 WL 459811 (S.D.N.Y. 1999); Travelers Insurance Co. v. Estate of Garcia, 2003 WL 1193535 (E.D.N.Y. 2003); Mills v. Poole, 2008 WL 413299 (W.D.N.Y.); Abu-Nassar v. Elders Futures, Inc., 1994 WL 445638 (S.D.N.Y. 1994).

3

**A.**
**The Court's Orders Established Mandatory (Not Optional) Deadlines**

In response to the foregoing points, plaintiffs argue that the CMO in MacNamara (Exhibit "B") "has long been inoperative, even in its amended version."[4]  Plaintiffs cite no authority of any kind for that argument.  On March 19, 2008, moreover, Magistrate Judge Francis expressly rejected that argument when he held that "While some of the Case Management Orders were extended de facto by the master deposition scheduling order, there was no basis for assuming that they had been abandoned altogether."  Order of March 19, 2008 ¶ 2 (Exhibit "G").[5]  The master deposition scheduling order was entered July 5, 2007 – long after the pleadings in all of the RNC cases were closed pursuant to the CMO (see Exhibit "H").  Any extension of discovery deadlines (which came after the deadline for plaintiffs to amend their complaint) did not relieve the plaintiffs of that earlier deadline.  Thus, all of the examples cited by plaintiffs about the parties engaging in acts after the deadlines set in the CMO (e.g. discovery and dispositive motion practice) miss the point entirely.[6]  Plaintiffs in MacNamara (and in all of the RNC cases) expressly stipulated to the CMOs including the pleading deadline.  In fact, the July 15, 2005 date was set by Judge Karas at plaintiffs' request after plaintiffs wrote to the Court

---

[4] Plaintiffs again argue that "defendants never argued to Judge Francis that the CMOs or Rule 16(b) were controlling."  Plaintiffs' Brief at 2.  As discussed in Section II above, however, defendants explicitly argued that the proposed amendments should be rejected because of plaintiffs' undue delay in seeking these amendments.  Those arguments implicitly invoke the deadlines set forth in the CMOs (which set a variety of deadlines for the RNC cases) and invoke the good cause standard for modifying the CMOs (which is set forth explicitly both in the CMOs and in the text of Rule 16(b)).

[5] Magistrate Francis entered that order in response to defendants' request to compel opposing counsel to narrow their list of some 700 nonparties so that defendants could take only the necessary nonparty depositions.  Defendants agree with plaintiffs that the CMOs previously had been adjusted (or suspended) with respect to deposition deadlines, but that rationale does not apply to deadlines that had already expired years ago, including the deadlines for amendment of the complaints.

that they needed more time because "[o]ur law office has unexpectedly lost our lease." (See Order of July 19, 2005, Exhibit "J", providing that "plaintiffs shall file their amended complaint by July 15, 2005").[7] Plaintiffs never sought any subsequent extension on that deadline. Thus, plaintiffs' motion to amend, which was filed in August 2007, came some two years late.

Certain plaintiffs also argue that they should be relieved of the consequences of their extreme delay in seeking the amendments because some of the CMOs in the RNC cases lacked a specific deadline for the amendment of the complaints. In this category, plaintiffs recite eight cases in which Jeffrey Rothman is plaintiffs' counsel. See Plaintiffs' Brief at 3 n.3. Plaintiffs miss the point. During a conference with the parties on April 21, 2005, Judge Karas directed that the RNC cases shall be consolidated and that, in each case, "the parties shall submit a proposed case management order modeled on the case management order entered by this Court in MacNamara." That direction was memorialized in a proposed order -- to which all of the plaintiffs stipulated – that was executed by the Magistrate Judge on October 3, 2005 (Exhibit "C" at ¶¶ 15-16).[8] All plaintiffs' counsel, therefore, were on notice (and indeed consented) that the Court would impose a deadline for the amendment of the complaints early within the schedule established by the CMO in each of the RNC cases (as it had in MacNamara).

_____

[6] Like the order cited above in which Magistrate Francis effectively extended discovery deadlines in the CMOs, Magistrate Francis issued a separate order suspending the dispositive motion deadlines in the CMOs (Exhibit "I"). In contrast, there was no order extending the MacNamara pleading deadline beyond July 15, 2005.

[7] Plaintiffs' argument in effect that the pleading deadline – the very earliest of the deadlines set by the CMO – was merely advisory invites chaos. If plaintiffs believed, as they argue now, that that deadline was "wholly divorced from the reality of [these] cases," they should have sought an extension on that deadline at the appropriate time.

[8] Paragraph 16 of that order expressly provided that that order addressed both preexisting and anticipated RNC cases; and recited that plaintiffs' counsel who intended to bring such future cases "have agreed that the terms of this order shall govern any new RNC cases[.]" According to ¶ 16 of that order, the names of those plaintiffs' counsel -- who expressly agreed both in open Court before Judge Karas and before the proposed order was forwarded to the Court for approval – include "Martin Stolar, Gideon Oliver, Norman Frederick Best, Susan Taylor, Michael Spiegel, Jeffrey Rothman, John Ware Upton, Alan D. Levine and Alan Levine."

As we discussed above, in <u>MacNamara</u>, the Court set July 15, 2005 as the deadline for amendment of the complaint. Among the latest RNC cases commenced, the Court set a deadline of May 1, 2006 in <u>Tikkun</u> and of June 1, 2006 in <u>Portera</u> and <u>Reuben</u> (Exhibits "K"-"L").[9]  In the CMOs of the eight cases brought by Jeffrey Rothman, if they were "modeled on the case management order entered by this Court in <u>MacNamara</u>" (pursuant to Judge Karas' order), those deadlines would have fallen before May 1, 2006 (in <u>Coburn</u>, <u>Phillips</u>, <u>Galitzer</u>, <u>Sikelianos</u>, <u>Bastidas</u>, <u>Sloan</u>, <u>Carney</u>); and before July 1, 2006 (in <u>Drescher</u>), which are the dates set in those CMOs for service of written discovery. (Those CMOs are attached as Exhibits to Plaintiffs' Brief).  At the latest, those deadlines would have fallen long before the close of fact discovery in the CMOs, which was set for September 1, 2006 at the latest (in <u>Drescher</u>). Plaintiffs in those cases, however, delayed their motion to amend the complaints until some 15 months past that date (13 months in the case of <u>Drescher</u>).  Plaintiffs did so knowing that the Court had long since ordered "[n]o further extensions" to those particular CMOs (Exhibit "O").

Thus, it was clear error and contrary to law for the Magistrate Judge to have overlooked these matters, particularly after defendants objected to plaintiffs' amendments on the grounds of delay.  See <u>Nairobi Holdings Limited v. Brown Brothers Harriman & Co.</u>, 2006 U.S. Dist. LEXIS 9931, *20 (S.D.N.Y. 2006) (Katz, M.J.) (where scheduling order sets deadline for amendment of the complaint, motion to amend was governed by that order and by good cause standard under Rule 16(b)); <u>Grochowski v. Phoenix Construction</u>, 318 F.3d 80, 86 (2d Cir. 2003) (same); <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 236, 340 (2d Cir. 2000) (same).

---

[9] In other cases, by way of example, the CMOs provide the following deadlines for amendment of the complaints: <u>Wrobleski</u>, <u>Lee</u>, <u>Cohen</u>, <u>Kornicke</u> (December 1, 2005) (Exhibit "M"); <u>Black</u>, <u>Bell</u>, <u>Starin</u>, <u>Haber</u> (December 30, 2005) (Exhibit "N").

**B.**
## The Magistrate Judge Did Not Consider Whether Plaintiffs Had Established
## <u>Good Cause For An Amendment Of The CMOs – And Plaintiffs Have Not Done So</u>

As explained in defendants' Appeal Brief, the Magistrate Judge never considered whether the plaintiffs had good cause for an amendment of the CMOs – and plaintiffs never made that showing before the Magistrate Judge. Plaintiffs' argument on this appeal that they have good cause should be rejected as untimely. If the Court entertains that argument, it should be rejected on its merits. Plaintiffs argue chiefly that "defendants made it impossible . . . to meet the CMO deadlines" because "defendants did not identify [Cohen] as a relevant witness in the RNC cases until December 2006." Plaintiffs' Brief at 3-4. This, of course, is a transparent pretext for plaintiffs' extreme delay in seeking the wide range of amendments they now seek.

Plaintiffs were, in fact, on notice of Commissioner Cohen's identity at least as early as December 2005, when he was identified in the deposition testimony of Chief Terence Monahan (who was among the first defense witnesses deposed). Cohen again was identified repeatedly during the July 2006 deposition of the Chief of Department Joseph Esposito (the highest ranking uniformed member of the service).[10] Thus, plaintiffs had ample notice of Cohen as a potential defense witness by July 2006, but failed to seek any amendment to name Cohen in their complaints until August 2007. Notably, the NYCLU never named Cohen as a defendant in <u>Dinler</u> and <u>Schiller</u> (although they have amended their complaints on several occasions), presumably because they do not consider him a necessary defendant.

Even if plaintiffs' argument that "defendants did not identify Cohen [] until December 2006" were credited, however, it would not explain the plaintiffs' delay in seeking the

---

[10] <u>See</u> excerpts from the Deposition of Terence Monahan at 73-81 (Exhibit "P"); and from the Deposition of Joseph Esposito at 184-94, 357-63, 467-68, 712-13, 777-80, 794-99 (Exhibit "Q").

vast majority of the amendments that plaintiffs now seek. Almost all of those amendments have nothing whatsoever to do with Cohen. Plaintiffs have failed to explain, for instance, how their eleventh-hour proposal to add claims to challenge the constitutionality of the "parading without a permit" and "disorderly conduct" statutes was the result of defendants' identification of Cohen. Plaintiffs similarly have failed to explain how their belated proposals to add claims based upon the denial of a right to a "fair trial" or their claims for "supervisory liability" or any of the other claims that they now seek to add was the result of defendants' identification of Cohen. With respect to those proposed amendments that are not related to defendants' identification of Cohen (which include all except the claim against Cohen himself), plaintiffs have failed to offer any legitimate excuse as to why they waited until August 2007 to propose those amendments.[11]

Plaintiffs ask the Court to accept the argument that they engaged in this extensive delay to "avoid burdening the Court with multiple, incremental motions to amend," suggesting that this is the first time that they have sought to amend. Plaintiffs' Brief at 5. The truth, however, is starkly different. In the order of the Magistrate Judge now on appeal, he recites early on that "the proposed amended complaints in the pending motions may be the first, second, third, or fourth amended complaints." Order at 2. That hardly tells the story. A review of the proposed amendments shows, in fact, that at least one of those complaints is in its sixth edition (Fifth Amended); fully 15 complaints are in their fifth iteration (Fourth Amended); 4 are in their fourth version (Third Amended); 6 are in their third draft (Second Amended) and 9 are in their

---

[11] Plaintiffs' more general argument that defendants produced their witnesses for deposition too slowly fails for the same reason – plaintiffs fail to explain how the new claims proposed relate (if at all) to that testimony. Only the identification of the names of certain defendants could have been delayed by the pace of discovery; but on that score, it is worth noting that plaintiffs in the MacNamara case (and almost all other plaintiffs) failed to notice any defense witnesses for deposition until the waning months of 2006. Their belated complaints to Magistrate Francis (dated in late April and May of 2007) demonstrate plaintiffs' own lack of diligence in pursuing that discovery.

second edition (First Amended).  Contrary to plaintiffs' argument, none of the plaintiffs have withheld their amendments.  Rather, plaintiffs have amended their complaints at will.  Thus, plaintiffs' self-serving argument that they delayed proposing amendments to avoid burdening the Court should be rejected.[12]

In any event, plaintiffs' argument appears to turn on its head the role of the Court in managing its docket – and the obligation of the parties to comply with Court orders.  In these cases, Judge Karas and Magistrate Francis issued numerous scheduling orders (which included the deadlines for amending the complaints) in an effort to manage this unwieldy litigation.  It was not for plaintiffs -- unilaterally and without seeking the Court's permission – to decide not to comply with those orders.  As defendants have suggested above, the traditional and proper course would have been for the plaintiffs to seek an extension on their deadline, which they did not do.  Plaintiffs should not now be excused for their defaults after arrogating unto themselves the decision whether to comply with the Court's orders.[13]

---

[12] Notwithstanding plaintiffs' numerous prior opportunities to amend, defendants emphasize that plaintiffs elected not to name Cohen (or to seek the other amendments that they now seek) until August 2007.

[13] Plaintiffs seek to distinguish the many cases cited by defendants in which the Courts denied amendments that were sought after the applicable CMO deadline had expired, after undue delay, after multiple prior amendments or where prejudice would result.  Plaintiffs argue that, "[u]nlike the cases cited by defendants . . . when plaintiffs moved to amend in late August 2007, discovery was still in full swing, with many months to go."  Plaintiffs' Brief at 5.  Plaintiffs' argument overlooks the deadlines in the CMOs for the amendment of the complaints and Magistrate Francis' recent order, dated March 19, 2008 (Exhibit "G"), which expressly rejected the argument that the deadlines in the CMOs had been abandoned.  Plaintiffs' argument also misstates the case law, in which Courts routinely have denied amendments before the close of discovery on the grounds set forth above.  See, e.g., Nairobi Holdings Limited v. Brown Brothers Harriman & Co., 2006 U.S. Dist. LEXIS 9931, *17-25 (S.D.N.Y. 2006) (Katz, M.J.) (denying proposed amendment where plaintiff failed to show good cause under Rule 16(b) for amendment of the CMO although the amendment was sought before the close of discovery); Credit Suisse First Boston LLC v. Coeur D'Alene Mines Corporation, 2005 U.S. Dist. LEXIS 1893, *3, *10 (S.D.N.Y. 2005) (Leisure, J.) (denying proposed amendment where it was sought after the deadline set in the CMO for "amendments of pleadings as of right" and "five weeks prior to the discovery deadline"); O'Sullivan v. The New York Times Co., 1997 U.S. Dist. LEXIS 19419 (S.D.N.Y. 1997) (Preska, J.) (denying proposed amendment where plaintiffs had delayed for seven months although the amendment was sought before the close of discovery); PKFinans International Corporation v. IBJ Schroder Leasing Corporation, 1996 U.S. Dist. LEXIS 2177, *4-9 (S.D.N.Y. 1996) (Scheindlin, J.) (denying proposed amendment although the amendment was sought before the close of discovery).  Plaintiffs also argue that

Continued...

In short, plaintiffs in these cases have failed to show that they were diligent in bringing their motions in August 2007 or that there is good cause to permit them a belated motion to amend – and it is plaintiffs' burden to make this showing. "Good cause in this context has been interpreted to mean that scheduling deadlines could not be met despite a moving party's diligence." See Nairobi Holdings Limited v. Brown Brothers Harriman & Co., 2006 U.S. Dist. LEXIS 9931, *20 (S.D.N.Y. 2006) (Katz, M.J.) (holding that motion to amend was governed by Rule 16(b) and that plaintiff failed to show diligence and failed to show good cause under Rule 16(b)); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003) (same); Parker v. Columbia Pictures Indus., 204 F.3d 236, 340 (2d Cir 2000) (same). "Moreover, while the absence of prejudice to a nonmoving party may be relevant to leave to amend under Rule 15(a), it does not fulfill the good cause requirement of Rule 16(b)." Nairobi Holdings at *20. "The Second Circuit has noted that 'if we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rule[s]." Id. at *19. Accordingly, plaintiffs have failed to establish good cause for any extension on the deadlines for amending the complaints.

## C.
### The Magistrate Judge Failed To Properly Assess The Prejudice To Defendants

Plaintiffs next argue that "defendants make no argument that [the Magistrate Judge's] conclusions [concerning the prejudice to defendants] were contrary to law." Plaintiffs' Brief at 7. Defendants, of course, made precisely that argument. See Appeal Brief at 12-15.

---

"failure to act on acquired knowledge" does not mandate denial of the amendments. Plaintiffs' Brief at 6. This is another way of saying that delay alone is insufficient to deny the amendments, for which plaintiffs cite Sommer v. PMEC Associates, 1993 WL 361660, *3 (S.D.N.Y. 1993). Defendants, of course, have not asked the Court to reverse on the grounds of "delay alone" but on the basis of the numerous factors cited by defendants (including expiration of the CMO deadlines, failure to show good cause for extension of those deadlines, delay, numerous prior amendments, and prejudice among others) that were overlooked by the Magistrate Judge.

Defendants emphasize that, under the authorities cited in their Appeal Brief and above, it was plaintiffs' burden to show good cause for an amendment of the CMOs to permit an untimely motion to amend – and the Magistrate Judge's failure to apply that law was error. On the basis of the same authorities, it was also error for the Magistrate Judge to have reversed the burden by requiring the defendants to show undue prejudice. Having done so, however, the Magistrate Judge committed a third error by not properly applying Second Circuit precedent to the effect that "the longer the period of an unexplained delay [in seeking an amendment], the less will be required of the nonmoving party in terms of a showing of prejudice." Block v. First Blood Associates, 988 F.2d 344, 350 (2nd Cir. 1993). Under this standard, considering the extensive (and unjustified) delays discussed above, and the prejudice discussed in defendants' Appeal Brief, the Magistrate should have denied the amendments.

Among other errors in the Magistrate Judge's assessment of prejudice, he held that "the majority of [the new defendants] are already named in [] RNC cases, and they appear to have all been deposed already or scheduled for deposition." Order at 5. This sweeping conclusion is plainly incorrect. In MacNamara alone, numerous newly proposed defendants have not been deposed – Chief Nicholas Estavillo, Captain Matthew Hyland, Captain Chris Monahan, Captain Jaskaran and PO Kevin Scott. Even those who have been deposed previously, if they are added as named defendants, will complicate dispositive motion practice (because defendants have an obligation to represent them, to investigate defenses available to them and to seek their dismissal if warranted) and will complicate trials (because additional defendants add to the complexity of civil trials). It is not appropriate, as plaintiffs do, to simply shrug at the considerable additional burdens imposed on defendants and defense counsel by the addition of hundreds of new defendants at the last minute.

With respect to the new claims, they too will require further discovery, they will complicate dispositive motions (because defendants will be obligated to seek their dismissal if warranted) and they will complicate trial (because additional claims complicate civil trials). In particular, new claims asserted against Commissioner Cohen, members of the NYPD Legal Department, and the City are highly prejudicial. Those claims include serious and unsupported allegations that defendants "institut[ed] a system of perjured sworn statements to attempt to justify [unlawful arrests]" and "creat[ed] arrest paperwork [that] contained knowingly false statements." See Proposed Second Amended Class Action Complaint in MacNamara (¶¶ 2, 56, 66, 72(H-I), 223, 227, 231, 235, 254 and 260) (Exhibit F-1). In addition, as discussed more fully in defendants' Appeal Brief, plaintiffs now claim that Cohen falsified intelligence data.

These allegations, which amount to new claims of a massive conspiracy within the NYPD to commit fraud, change the character of this litigation and increase the potential liability of defendants, resulting in serious prejudice to defendants. See PKFinans International Corporation v. IBJ Schroder Leasing Corporation, 1996 U.S. Dist. LEXIS 2177, *6-11 (S.D.N.Y. 1996) (Scheindlin, J.) (holding that "because the proposed fraud claims would dramatically alter the nature of the lawsuit, the introduction of the claims would be prejudicial" and those claims would not be permitted).[14] In addition, if the new claims against Cohen are permitted, plaintiffs

---

[14] Plaintiffs cite to several passages in the Magistrate Judge's order to the effect that the additional discovery obligations of defendants resulting from the newly added "parading without a permit" and "disorderly conduct" claims will not prejudice defendants. Plaintiffs' Brief at 8-9. These optimistic assessments, however, already have proven false. Plaintiffs already have served numerous burdensome document requests that seek precisely the kind of sweeping documentary evidence that the Magistrate Judge presumes will not prejudice the defendants. In plaintiffs' "Fourth Set of Requests for Production of Documents," for instance, plaintiffs sought "Any and all documents concerning all criminal court summons[es] issued by any member of the New York City Police Department from July 1, 2004 to October 31, 2004, including, inter alia, a copy of the summons itself and any summons logs." Document Request #12. The discovery sought, even if limited only to the summonses themselves as opposed to "any and all documents concerning" those summonses, would be extremely burdensome. The NYPD does not file summonses in a central location, nor does it maintain electronic copies of summonses. Collecting summonses would involve physically collecting them from 94 separate commands. Those summonses then would have to be

Continued...

will undoubtedly seek still more discovery including additional depositions of witnesses on intelligence issues after they have concluded their deposition of Commissioner Cohen. This will extend discovery in these cases, require additional motion practice before Your Honor and Judge Francis, and further delay ultimate resolution of these cases – all to the further prejudice of defendants. After 3-1/2 years of preparing to try these cases on the basis of the prior pleadings – and in light of the very considerable expense associated with that undertaking – it is highly prejudicial and simply unfair to defendants to permit plaintiffs this wholesale revision of their cases.

## IV.
## The Claims Against Cohen Are Not Viable

Plaintiffs argue that "the amended complaints specifically allege that [Cohen's] actions and omissions caused the plaintiffs' unlawful arrests" but plaintiffs fail to refer the Court to any particular paragraph in any of the complaints. Plaintiffs' Brief at 9. Plaintiffs argue that "the proposition asserted in the amended complaints as to how [Cohen] caused a violation of plaintiffs' rights is a simple one," but plaintiffs then take approximately four pages (from pages 9 through 12) attempting to explain it. In so doing, defendants note that plaintiffs have abandoned the version of the complaint that they had submitted to the Magistrate Judge for approval. Instead, they now refer to a modified version of the complaint that they filed after the Magistrate Judge's order. Plaintiffs' Brief at 10 (referring to "as filed" version of complaint). This is completely improper. Because the Magistrate Judge's order is based upon the version of the complaint submitted to him, and the appeal was taken from that order, defendants limit their

---

copied one at a time on a copying machine or scanner. The NYPD estimates that two detectives assigned exclusively to such a project, with a supervisor overseeing their activities, would need 4-6 months to complete it. Plaintiffs have not stopped there. Plaintiffs recently have moved to compel complete responses to this request. Plaintiffs also served a subpoena upon the New York City Criminal Court for the same burdensome information.

analysis to the earlier version of the complaint.[15]  Plaintiffs' decision to abandon their earlier pleading, however, is a clear concession that the earlier version of their complaint was seriously defective.

Plaintiffs then argue that "[i]t is that causal link between Cohen's alleged fabrication and distortion of intelligence information and the violation of plaintiffs' rights" that supports the cause of action against him. Plaintiffs' Brief at 11.  Plaintiffs, however, have failed to address the serious errors identified by defendants in their Appeal Brief.  Plaintiffs, for instance, fail to refer the Court to any allegation (much less to any allegation that is pleaded with the requisite particularity) that Cohen provided any "false" information to anyone; or that Kelly actually relied upon any such false information in adopting the policies at issue; or that any such false information was either the "but for" or "proximate" cause of the arrest of any of the plaintiffs in these cases.  Allegations such as these would be essential even under the notice pleading standard of Rule 8.  See Bell Atlantic v. Twombly, -- U.S. --, 127 S.Ct. 1955 (2007). Plaintiffs' failure to incorporate them in a pleading of fraud or false statement, where a heightened pleading standard applies, is fatal to their claim. See, e.g., Shelly v. Brandveen, 2006 U.S. Dist LEXIS 15487, *9-13 (E.D.N.Y. 2006) (Garaufis, J.) (dismissing Section 1983 complaint that alleged fraud on grounds that it was not adequately pleaded under Rule 9(b)).[16]

---

[15] Defendants, of course, do not waive and hereby expressly reserve their right to move to dismiss each of the amended complaints as filed with the Court.

[16] In Shelly, the Court held that Rule 9(b) requires "that a complaint alleging fraud (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. . . . If a complaint fails to comply with these rules, the court may, on motion or sua sponte, dismiss the complaint." Id. at *10 (citing Rombach v. Chang, 355 F. 3d 164, 170 (2d Cir. 2004), et al.).

Putting aside the wholesale failure of plaintiffs to actually plead the claim that they argue in their briefs, plaintiffs have failed to articulate even in their briefs a viable cause of action against Cohen. Among the most serious defects in plaintiffs' theory against Cohen is that the causal link between any conduct of Cohen on the one hand, and the alleged violation of plaintiffs' constitutional rights on the other, is far too attenuated to support liability against Cohen. This serious flaw is readily apparent from plaintiffs' own articulation of their theory: "[Cohen] knew or should have known that, when he falsely informed those officials that the plaintiffs' protests would be violent and unlawful, the defendants would adopt policies, such as the no-summons and fingerprint policies, that would determine how the NYPD would arrest and detain persons arrested during the RNC." Plaintiffs' Brief at 11 (emphasis added). Such a theory would fail as a matter of law even if it were actually pleaded. See, e.g., Martinez v. California, 444 U.S. 277, 279, 285 (1980) (affirming dismissal of Section 1983 complaint on ground that the complaint failed to state a claim for relief under federal law where the injury alleged was "too remote a consequence of the [state actor] to hold [him] responsible under the federal civil rights law" and concluding that "it is perfectly clear that not every injury in which a state official has played some part is actionable").[17]

Plaintiffs do not contest defendants' argument that the policies of the NYPD to arrest and fingerprint individuals who violated the law were constitutional – and the Court should

---

[17] See also Taylor v. Brentwood Union Free School District, 143 F.3d 679, (2d Cir. 1998) (reversing judgment on jury verdict in favor of plaintiff in Section 1983 case on grounds that defendants' act was not the cause of the plaintiff's injury where there existed a superseding cause; and holding that "[t]he Supreme Court consistently has refused to impose § 1983 liability upon defendants where the causal connection between the conduct and the constitutional injury is remote rather than direct"). The Second Circuit cited a prior decision that recognized that that "although the actions of certain defendants were unconstitutional, liability under § 1983 did not attach because such actions could not be considered the cause of any injury sustained by the plaintiff." Id. at 686. The Court concluded as a matter of law that "because no reasonable factfinder could conclude that Rooney was the cause of any constitutional harm or injury to Taylor, Taylor cannot prevail in this § 1983 action." Id. at 688.

so find as a matter of law. In a footnote, plaintiffs argue only that the selective <u>application</u> of those policies was unconstitutional. Plaintiffs' Brief at 10 n.11. This further severs the causal link between Cohen and the alleged constitutional violations because it is beyond dispute that Cohen had nothing whatsoever to do with the "application" of the arrest and fingerprint policies. It is also beyond dispute that Kelly – not Cohen -- was responsible for the adoption and application of those policies, which further severs the causal link necessary to plead a cognizable claim against Cohen. In addition, plaintiffs' argument that qualified immunity does not apply "where there is an allegation of intentional wrongdoing or deliberate indifference" (Plaintiffs' Brief at 16) is of no consequence here because <u>none</u> of the plaintiffs have actually alleged that the conduct of Cohen about which they complain was either "intentional" or "deliberately indifferent." <u>See</u> Appendix to Appeal Brief; Exhibits F1-35. These are fundamental defects that plaintiffs cannot overcome. The Magistrate Judge's failure to recognize them warrants the reversal of the order on appeal and the dismissal of the claims against Cohen as a matter of law.[18]

---

[18] Defendants note that, even after the ample opportunity to do so in response to defendants' Appeal Brief, plaintiffs have failed to identify any authority that supports their attenuated claim against Cohen. Plaintiffs have not even been able to put a name to the cause of action asserted against him. Plaintiffs argue (without pleading) that Cohen provided false information to Kelly, but plaintiffs have cited no cases that authorize a cause of action against Cohen on that basis.

In addition, plaintiffs argue that defendants have raised for the first time on appeal that the allegations against Cohen "do not satisfy the notice requirements" of Rule 8. Plaintiffs' argument at 12. In fact, defendants argued extensively below that plaintiffs' allegations against Cohen were wholly deficient to support a cause of action against him. <u>See</u> Brief Below. In a footnote, plaintiffs also weakly argue that <u>Bell Atlantic</u> does not require "heightened fact pleading" of this claim. Plaintiffs' Brief at 12 n.13. This, of course, is nonsense. <u>Bell Atlantic</u> was decided under Rule 8 of the FRCP. In pleadings of fraud or false statement such as plaintiffs have pled against Cohen, there can be no doubt that the particularized pleading requirements of Rule 9(b) apply. Plaintiffs also argue wrongly that the courts have emphasized "the continued viability" of earlier Supreme Court holdings. In <u>Bell Atlantic</u>, however, the Supreme Court expressly overruled <u>Conley v. Gibson</u>. Plaintiffs argue that "the amended complaints . . . provide ample notice because they plainly inform [Cohen] that . . . he will have to demonstrate that the intelligence information he presented to the other defendants accurately reflected the raw intelligence data gathered by his Division." Plaintiffs' Brief at 13. Assuming that any claim lies against Cohen, plaintiffs have failed completely to identify in their pleading any false information provided by him, which is essential. <u>See generally</u> <u>Romer v. Morgenthau</u>, 119 F. Supp. 2d 346, 356 (S.D.N.Y. 2000) (Marrero, J.) (dismissing conspiracy complaint and holding that "[p]resumably, Romer's theory is that, were his complaint to survive the motion to dismiss, he

Continued...

Finally, plaintiffs argue that they "are surprised that defendants have objected [to the as-applied statutory challenges] because the MacNamara plaintiffs consented to defendants' request for a generous extension of time in which to file their Rule 72 motion on the condition that [defendants] not appeal the amendments to add these claims. . . . Defendants apparently felt no obligation to keep their word." Plaintiffs' Brief at 20. Plaintiffs' suggestion that there was any such agreement is a transparent fabrication – and defendants ask the Court to take note of it. Defendants' letter to the Court seeking that extension was transmitted on Friday, February 1, 2008 (Exhibit "R"). Plaintiffs' email to defense counsel, which purports to place the condition on the scope of defendants' appeal, was not transmitted until two days later – Sunday, February 3, 2008 – and does not represent that any such agreement had been reached. (Exhibit "S"). Defendants, of course, never agreed to that condition; nor did defendants represent to the Court that they had reached any agreement with the Beldock firm (see Exhibit "R").

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth more fully in defendants' Appeal Brief, defendants respectfully request that the Court issue an order granting the relief sought in defendants' Appeal Brief.

Dated:    April 7, 2008
          New York, New York

---

would be able through discovery to develop a record substantiating his general pleadings. This aspiration need not detain the Court; Romer is entitled to proceed only if the facts he seeks to prove would state a legally cognizable claim").

Plaintiffs also appear to argue that, because the defendants submitted a single consolidated brief opposing the plaintiffs' proposed amended complaints, the Magistrate Judge was correct in overlooking that each of the proposed complaints must be analyzed on its own merits. Plaintiffs' Brief at 13 n.14. For this remarkable – and incredible – proposition, plaintiffs cite no authority whatsoever.

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendants*

By: _____
James Mirro (JM 2265)
Raju Sundaran (RS 8011)
Special Federal Litigation Division
100 Church Street, Room 3-130
New York, New York 10007
Tel:  212.788.8026
Fax:  212.788.9776

Appendix of Cases On Appeal Of January 23, 2008 Order

1.    MacNamara, *et al*. v. City of New York, *et al.*, 04 CV 9216 (RJS)(JCF).

2.    Rechtschaffer v. City of New York, *et al.*, 05 CV 9930 (RJS)(JCF).

3.    Portera v. City of New York, *et al.*, 05 CV 9985 (RJS)(JCF).

4.    Bunim, *et al*. v. City of New York, *et al.*, 05 CV 1562 (RJS)(JCF).

5.    Kalra, *et al*. v. City of New York, *et al.*, 05 CV 1563 (RJS)(JCF).

6.    Ryan, *et al*. v. City of New York, *et al.*, 05 CV 1564 (RJS)(JCF).

7.    Garbini, *et al*. v. City of New York, *et al.*, 05 CV 1565 (RJS)(JCF).

8.    Greenwald, *et al*. v. City of New York, *et al.*, 05 CV 1566 (RJS)(JCF).

9.    Pickett, *et al*. v. City of New York, *et al.*, 05 CV 1567 (RJS)(JCF).

10.   Tremayne, *et al*. v. City of New York, *et al.*, 05 CV 1568 (RJS)(JCF).

11.   Biddle, *et al*. v. City of New York, *et al.*, 05 CV 1570 (RJS)(JCF).

12.   Moran, *et al*. v. City of New York, *et al.*, 05 CV 1571 (RJS)(JCF).

13.   Botbol, *et al*. v. City of New York, *et al.*, 05 CV 1572 (RJS)(JCF).

14.   Crotty, *et al*. v. City of New York, *et al.*, 05 CV 7577 (RJS)(JCF).

15.   Stark, *et al*. v. City of New York, *et al.*, 05 CV 7579 (RJS)(JCF).

16.   Lalier, *et al*. v. City of New York, *et al.*, 05 CV 7580 (RJS)(JCF).

17.   Grosso v. City of New York, *et al.*, 05 CV 5080 (RJS)(JCF).

18.   Dudek v. City of New York, *et al.*, 04 CV 10178 (RJS)(JCF).

19.   Bell v. City of New York, *et al.*, 05 CV 3705 (RJS)(JCF).

20.   Starin v. City of New York, *et al.*, 05 CV 5152 (RJS)(JCF).

21.   Lee v. City of New York, *et al.*, 05 CV 5528 (RJS)(JCF).

22.   Cohen v. City of New York, *et al.*, 05 CV 6780 (RJS)(JCF).

23. <u>Phillips, *et al.* v. City of New York, *et al.*</u>, 05 CV 7624 (RJS)(JCF).

24. <u>Coburn, *et al.* v. City of New York, *et al.*</u>, 05 CV 7623 (RJS)(JCF).

25. <u>Drescher v. City of New York, *et al.*</u>, 05 CV 7541 (RJS)(JCF).

26. <u>Bastidas, *et al.* v. City of New York, *et al.*</u>, 05 CV 7670 (RJS)(JCF).

27. <u>Xu, *et al.* v. City of New York, *et al.*</u>, 05 CV 7672 (RJS)(JCF).

28. <u>Sloan, *et al.* v. City of New York, *et al.*</u>, 05 CV 7668 (RJS)(JCF).

29. <u>Galitzer v. City of New York, *et al.*</u>, 05 CV 7669 (RJS)(JCF).

30. <u>Sikelianos v. City of New York, *et al.*</u>, 05 CV 7673 (RJS)(JCF).

31. <u>Abdell, *et al.* v. City of New York, *et al.*</u>, 05 CV 8453 (RJS)(JCF).

32. <u>Adams, *et al.* v. City of New York, *et al.*</u>, 05 CV 9484 (RJS)(JCF).

33. <u>Araneda, *et al.* v. City of New York, *et al.*</u>, 05 CV 9738 (RJS)(JCF).

34. <u>Eastwood, *et al.* v. City of New York, *et al.*</u>, 05 CV 9483 (RJS)(JCF).

35. <u>Tikkun v. City of New York, *et al.*</u>, 05 CV 9901 (RJS)(JCF).